MARY DRYOVAGE, (CA SBN 112551)
Law Office of Mary Dryovage
    600 Harrison Street, Suite 120,
    San Francisco, CA 94107
    Telephone: 415 593-0095
    Fax. 415 593-0096
    Email: mdryovage@igc.org

Attorney for Plaintiff
SALVADOR MANDUJANO

E-filing    ORIGINAL

SBA

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR MANDUJANO,<br><br>    Plaintiff,<br><br>v.<br><br>TIMOTHY F. GEITHNER, SECRETARY OF THE U.S. DEPARTMENT OF TREASURY (U.S. MINT),<br><br>    Agency. | Docket No. CV10 1226<br><br>**COMPLAINT - EMPLOYMENT DISCRIMINATION BASED ON VETERANS STATUS, DISABILITY AND RACE/NATIONAL ORIGIN,**<br><br>**JURY TRIAL REQUESTED** |

### I.

### NATURE OF THE ACTION

1.    This action is brought by Plaintiff SALVADOR MANDUJANO, (hereafter "MANDUJANO"), a Mexican-American disabled veteran who served as a U.S. Mint Police Officer GS-08 in San Francisco, CA from June 3, 1990, until he was removed on December 31, 2008. His removal is unlawfully based on his veterans status, disability, (refusal to provide reasonable accommodation), and race/national origin, by TIMOTHY F. GEITHNER, SECRETARY, U.S. DEPARTMENT OF TREASURY, (hereafter "Defendant" or "DOT").

2.    This action is brought under the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended by the Civil Rights Act of 1991 (Title VII), the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, as amended by the Americans With Disabilities Act (ADA), the Veterans Equal Opportunity Act of 1998 (VEOA), 5 U.S.C. § 2302(B)(11), the Civil Service Reform Act, 5 U.S.C. §1201, *et seq.* (CSRA), and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

1   Plaintiff seeks backpay, front pay and compensatory damages, as well as a declaratory judgment

2   and injunction to restrain defendant employer from committing prohibited personnel practices,

3   policies, customs and usages, from discriminating against Plaintiff and other employees of the

4   DOT based on veterans status, disability, (refusal to provide reasonable accommodation) and

5   race/national origin. Plaintiff seeks injunctive relief requiring defendant employer to take

6   affirmative and effective steps to remove and otherwise discipline managers who have failed to

7   comply with the VEOA, the Rehabilitation Act, Title VII and the CSRA. Plaintiff seeks

8   injunctive relief requiring the defendant employer to take specific actions designed, implemented

9   and confirmed by qualified non-government consultants to ensure that all supervisory employees

10  are adequately trained to identify, investigate and stop situations and complaints. Such specific

11  actions, include, but are not limited to: (i)   allocation of significant funding and trained staff to

12  implement all changes within two years; (ii)  discipline  managers who have violated the

13  agency's policies and failed to meet their legal responsibility to promptly investigate complaints

14  and to take effective action to stop and deter prohibited personnel practices against employees;

15  iii) establishing and strictly measuring EEO compliance as a critical element in every manager's

16  performance standards; iv) creating a process for the prompt investigation of harassment and

17  reprisal complaints separate from the agency's process; v) mandatory and effective training for

18  all employees and managers on discrimination issues, investigations and appropriate corrective

19  actions; and eliminating the backlog of current EEO cases alleging discrimination.

20                                          **II.**

21                          **JURISDICTION AND VENUE**

22  3.       The jurisdiction of this Court is based upon the Civil Rights Act of 1964, 42 U.S.C.

23  §2000e-16 *et seq.*, 28 U.S.C. §§ 1331, 1337, 1343, 1345 and 2401(a), which grant district courts

24  jurisdiction over actions alleging unlawful and discriminatory employment practices by federal

25  agencies and provides for judicial review of cases involving veterans status, disability (refusal to

26  provide reasonable accommodation), race/national origin and prohibited personnel practices.

27  The unlawful practices alleged in this complaint occurred in the Northern District of California.

28  ///

### III.

### **PLAINTIFF**

4.     Plaintiff MANDUJANO, is a citizen of the United States who has been employed by the U.S. DEPARTMENT OF TREASURY, U.S. Mint, San Francisco, California as a Police Officer from June 3, 1990 until December 31, 2008.

### IV.

### **DEFENDANT**

5.     Defendant TIMOTHY F. GEITHNER, SECRETARY OF THE U.S. DEPARTMENT OF TREASURY is the head of an executive agency within the meaning of the Civil Service Reform Act, 5 U.S.C. 1065 and the Civil Rights Act, as amended, 42 U.S.C. 2000e-16.  As such, defendant has the full responsibility for administration of all programs within the agency, including the employment policies and practices of the U.S. DEPARTMENT OF TREASURY in all regions and is in a position to create and implement a policy to eliminate and prevent any form of discrimination and retaliation and to provide complete relief for plaintiff.  Defendant is sued in his official capacity.

### V.

### **EXHAUSTION OF REMEDIES**

6.     Plaintiff MANDUJANO was removed on December 31, 2008.  On January 20, 2009, plaintiff filed a  timely "mixed case" MSPB Appeal alleging his removal was based on his race/national origin (Mexican-American), veterans status, disability and violations of the Civil Service Reform Act.  An administrative hearing was held on August 11, 2009 before MSPB Chief Administrative Judge Amy Dunning.  The initial decision issued on September 18, 2009. A timely Petition for Review to the Merit Systems Protection Board was filed on November 24, 2009.  Plaintiff received the Final Order and right to file a civil action in District Court, dated February 24, 2010.  *See* Exhibit A, Final Order, *Mandujano  v. Department of Treasury*, Docket No. SF- 0752-09-0228-I-1, dated February 24, 2010. Plaintiff  fully exhausted his administrative remedies.  This district court complaint was timely filed within thirty days of receipt of the Final Order.

# VI.

## STATEMENT OF FACTS

### A.    EMPLOYMENT HISTORY WITH U.S. MINT POLICE DEPARTMENT

7.    Plaintiff MANDUJANO served as a U.S. Mint Police Officer GS-08 in San Francisco, CA from June 3, 1990 until December 31, 2008.

8.    Plaintiff is a member of protected groups based on his race/national origin (Mexican-American), disability and veterans status.

9.    Defendant's agents, San Francisco Mint Field Chief Michael McCampbell, Inspector Daniel Massola, the deciding official and Police Lieutenant Jeffrey Mayhew, the proposing official, knew Plaintiff is a member of protected groups based on his race/national origin (Mexican-American), disability and veterans status.

10.    Plaintiff performance ratings for 2004, 2005, 2006, and 2007 were "successful" or better and contain comments such as "Officer Mandujano demonstrates an ability to think quickly on his feet and takes the initiative in solving problems he encounters along the way. He meets all elements and standards with little or no supervision." (2007); "Officer Mandujano's performance continues to be outstanding. He is a total team player that doesn't hesitate to go the extra mile to get the job done right the first time. He meticulously works at keeping all posts within the division clean. Keep up the good work." (2006); "Consistently promotes trust, respect, and integrity in team interactions and activities." (2005); "Officer Mandujano takes an active role in additional, organizational tasks leading to greater efficiency on shift." (2004). *See,* Appellant's MSPB Hearing Exhibit B-1, B-2, B-3, and B-4.

11.    Plaintiff's "performance was fine" throughout his employment. (HT[1] Mayhew, 241)

### B.    REQUEST FOR REASONABLE ACCOMMODATION

12.    Plaintiff was removed on December 31, 2008 for failure to maintain a driver's license and driving under the influence of alcohol.

13.    Plaintiff had a disability, based on his history of alcoholism.

---

[1]    The MSPB Hearing Transcript in *Mandujano v. Department of Treasury*, Docket No. SF- 0752-09-0228-I-1, is referred to as "HT", followed by the page number(s).

1   14.     In 1992 and in 1999,  Plaintiff had off-duty misdemeanor DUIs and his California Drivers

2   License was suspended.

3   15.     San Francisco Mint Police Officers were not required to have a valid drivers license when

4   Plaintiff was first employed by the Mint. *See* Agency Hearing Exhibit 2, dated August 1, 1989.

5   16.     Defendant's agents did not take disciplinary action or suspend plaintiff from his position

6   as a Police Officer in 1992.

7   17.     After discussing his alcoholism with his supervisors, Plaintiff sought treatment by going to

8   Alcoholics Anonymous on the recommendation of his supervisors.. (HT 171)

9   18.     The position description for Police Officer TR-083-08 added a requirement that

10   incumbent must  have a valid driver's license, and be medically qualified to drive a motor vehicle

11   to remain in the position.

12   19.     In 1999, Defendant's agents provided with reasonable accommodation by placing Plaintiff

13   in other Police Department positions and assigning him to do personal security functions while

14   his license was suspended.

15   20.     After the second DUI, Plaintiff re-joined Alcoholics Anonymous. He was restored to full

16   duty as a Mint Police Officer one year later.

17   21.     Plaintiff did not have any alcohol related incidents at work during the past 18 years.

18   22.     On Thursday, July 31, 2008, Plaintiff was doing yardwork at his home, on his day off.

19   (HT 181) He drank some beers and realized he had not eaten all day, so he drove to the Blue

20   Frog and ordered some food. (HT 181) On the way out of the parking lot, he got in a fender

21   bender accident and was arrested on a misdemeanor DUI charge. (HT 181-182)

22   23.     On August 22, 2008, Plaintiff pled guilty to a misdemeanor for driving under the influence

23   of alcohol; his California state driver's license was suspended for one year, effective September

24   11, 2008, he was ordered to pay $1,656 in fines and fees and was sentenced to three years

25   probation.

26   24.     On August 22, 2008,  provided the police report to Lieutenant Mayhew. (HT 183, 198)

27   *See also*, Agency File, Tab. 4(k), Incident Report dated August 20, 2008 ; Agency File, Tab 4(l)

28   Misdemeanor Complaint, dated August 5, 2008; Agency File, Tab 4(m) Traffic Collision Report,

1    dated August 11, 2008.

2    25.    McCampbell called Mint Headquarters, once he was aware of the situation (early August)

3    and he was ordered to find other work and relieve him of his duties as a police Officer. (HT

4    McCampbell, 21:15-19)   The next day,  Plaintiff was assigned to the Control Room. (HT 184-

5    185) *See* Agency File, Tab. 4(j), Memo to Officer Mandujano, dated August 22, 2008.

6    26.    Plaintiff enrolled in an 18 month alcohol treatment program called Healthy Partnerships

7    on August 27, 2008.  He has remained sober and continues to attend weekly counseling sessions

8    with a therapist, and to attend Alcoholics Anonymous meetings.

9    27.    On October 28, 2008, Plaintiff again requested a reasonable accommodation, by

10   reassigning him in another vacant position at the San Francisco Mint during the duration of his

11   license suspension.  Defendant and his agents was unwilling to reassign him to any other position

12   as a reasonable accommodation and removed him on December 31, 2008.

13   28.    The U.S. Mint did not upgrade the Mint Police Officers to California Peace Officers at

14   any time relevant to this dispute.

15   29.    In January 2002, the U.S. Mint issued Mint Directive Chapter 10 – Security, Part D -

16   Security and Police Operations, Administrative Matters.

17   30.    Chapter 10, MD 10-D-20 (6)(a) provides:

18            Any U.S. Mint Police officer arrested by any law enforcement agency must advise

19            their immediate supervisor as soon as possible.

20   31.  Plaintiff complied with this provision by calling Inspector Massola of his arrest and the

21   misdemeanor charge  at 0730 hours on August 1, 2008, the start time of the next shift and the

22   first opportunity to comply with this requirement. *See* Incident Report of Barbara J. Eike, Case

23   No. 08-USMP(SF)-029.

24   32.  Chapter 10, MD 10-D-20 (6)(c)(1) provides:

25            Officers must notify their supervisor immediately (and no later than 72 hours) of

26            any expiration, suspension or revocation of their operator's license and provide a

27            statement and documentation of the circumstances. They must not drive any Mint

28            leased, owned or rented vehicles during the period when they are not licensed, nor

1                 are they allowed to drive a non-governmental vehicle on U.S. Mint property until

2                 their license is restored.

3    33.     Plaintiff complied with this provision by calling Inspector Massola, as stated above. He

4    did not drive his personal vehicle or any Mint GOV at any time when his license was suspended.

5    34.      In January 2002, the U.S. Mint issued Mint Directive Chapter 10 – Security, Part D -

6    Security and Police Operations, <u>Temporary Light Duty</u>. The purpose of this section of the

7    directive is to establish policy and provide guidance to follow when the need for temporary light

8    duty arises.

9    35.     Chapter 10, MD 10-D-15 (4) provides:

10                 U.S. Mint Police management will make every effort to reasonably accommodate

11                 employees who are temporarily disabled due to on or off-the-job injuries or

12                 illnesses. Such accommodations may be within or outside the Protection SBU as

13                 appropriate.

14    36.     Plaintiff's California Drivers license was restored on September 8, 2009.

15    37.     On September 22, 2009, the California Unemployment Insurance Appeals Board

16    (CUIAB), issued a finding that Plaintiff Mandujano was not discharged due to misconduct; he is

17    not disqualified from receiving benefits and furthermore, he is able return to employment and

18    perform all of the essential functions of his position.

19          C.     **RACE DISCRIMINATION - DISPARATE TREATMENT**

20    38.      A Mint Police Officer who is not a member of the same protected group as Plaintiff

21    (Mexican-American) was given preferential treatment by Defendant's agents. Mint Police

22    Officer Anthony Frederico, a Caucasian had his license to carry a weapon taken away after he

23    was charged with a serious felony involving dangerous acts and acts of terrorism. (HT 10:6-17)

24    Frederico was never given disciplinary action. (HT 11:8-15) Plaintiff, in contrast, was treated

25    much more harshly for much less serious conduct, having been removed for an off-duty

26    misdemeanor which did not involve multiple instances of serious bodily harm. (HT 10:6-17)

27    39.      A similarly situated San Francisco Mint Police Officer who is not a member of the same

28    protected group as Plaintiff (Mexican-American) and who worked under the same managers and

1     supervisors as Plaintiff, was given preferential treatment. Officer McCaughey, a Caucasian,

2     engaged in off-duty misconduct of a more serious nature, to wit: McCaughey pulled his weapon

3     on an individual at a gas station. In violation of Mint regulations, the weapon was taken out of

4     the workplace, to the health club and gas station, and brandished in a violent manner.

5     McCaughey was relieved from his police duties and was charged with brandishing a weapon.

6     (HT 22:1-12) Initially, the Mint managers instituted four charges of off-duty misconduct and

7     proposed a suspension of three days. This disciplinary action was reduced to one day suspension.

8     The Mint managers further reduced the disciplinary action to paying $500.00 to attend a class in

9     handling of weapons with no disciplinary action in his personnel file.

10     40.     Another Mint Police Officer, who is not a member of the same protected group as

11     Plaintiff (Mexican-American) was given preferential treatment by Defendant's agents, San

12     Francisco Mint Police Department managers. Officer Otto H. Uebel was hired in 1977 and

13     worked as a Police Officer for the San Francisco Mint until his retirement on January 1, 1998.

14     *See* Agency Hearing Exhibits 7 and 8. Officer Uebel did not have a valid drivers license at any

15     time during his employment with the San Francisco Mint. Officer Uebel had monocular vision.

16     (HT 162:23-29) In 1992, when the Mint began to drive around the building, Plaintiff was

17     ordered by the sergeant on duty to drive Officer Uebel around because he did not have a drivers

18     license. (HT 163:1-17) Chief McCampbell provided reasonable accommodation to Officer

19     Uebel for 9 years. Mint supervisors knew that Uebel could not drive, because they rotated from

20     day to swing to graveyard shift and were aware of the scheduling re: driving with him. (HT

21     164:2-5)

22     **D**     **DISABILITY DISCRIMINATION**

23     41.     The regulations, 29 U.S.C. §1614.203( b), provide:

24          **The Federal Government shall become a model employer of individuals with**

25          **handicaps**. Agencies shall give full consideration to the hiring, placement, and

26          advancement of qualified individuals with mental and physical handicaps. An

27          agency shall not discriminate against a qualified individual with physical or mental

28          handicaps.

42.   Section 1614.203 (c) requires federal agencies to take broad steps to accomplish this goal:
      Reasonable accommodation. (1) An agency shall make reasonable accommodation
      to the known physical or mental limitations of an applicant or employee who is a
      qualified individual with handicaps unless the agency can demonstrate that the
      accommodation would impose an undue hardship on the operations of its program.

43.   The Americans with Disabilities Act Amendments Act (ADA-AA), which went into effect
on January 1, 2009, clarified that employers may not discriminate against employees because of
their disabilities, may not use a non-job related criterion as a basis for taking a job action and
must provide reasonable accommodation for employees with a record of a disabling condition.
Congress expressly disavowed *Toyota v. Williams*, 534 U.S. 184  (2002) and made clear that the
original definition of "disabled" applies.

44.   Defendant's agent, Massola received training on the changes in the ADA-AA in December
2008. Massola testified that he was aware that it would be easier for Plaintiff to establish that he
is a person with a disability once the ADA-AA went into effect.

45.   Defendant's agent, Massola decided to remove Plaintiff on December 31, 2008, the day
before the effective date of the Act in an attempt  to avoid the restoration of the full definition of
"disabled".

46.   Plaintiff requested reassignment to an alternate position for the duration of the time he was
without his license as a reasonable accommodation during the oral reply meeting on November 6,
2008. (HT Goldsmith 140-141) *See*, Agency File, Tab 4(c).

47.   Under Mint policy, Massola testified "for certain disabilities or medical reasons, we can
grant reasonable accommodation if we have something available and the person is qualified to do
it". (HT 58:12-16) It was within Massola's authority to grant the request for reassignment to
another vacant position for positions within the Police Division. (HT 59:12-25)

48.   Massola  testified that he had no other positions in the Police Department to fill during the
October -December 2008 time frame. (HT 60:8-22)

///

///

## E     VETERANS STATUS

49.     Plaintiff MANDUJANO has a service-connected disability and is a 10 point disabled veteran. Plaintiff joined the U.S. Army in 1984 and served until 1987, when he was honorably discharged. (HT 161) He was injured and applied for veterans status as 10% disabled in 1996. (HT 194-196) He was awarded military benefits in 2007. He is a member of a protected group based on his status as a 10% disabled veteran.

50.     The Secretary for the San Francisco Mint Police Department was diagnosed with cancer in the latter half of 2007. (HT 191-192) As a result, a Secretary position vacancy existed in 2008 which was not yet filled in August 2009. The Mint recruited to fill the Secretary vacancy from outside its own workforce. The secretarial positions was still vacant, as of the date of the MSPB hearing. (HT Mayhew 242)

51.     Plaintiff was qualified for the vacant position at all times relevant to this case and would have taken the position if offered to him. The Mint did not give Plaintiff notice of the vacancy and deliberately stated to him that there were no vacant positions. Plaintiff should have been told of the position and allowed to apply but was not informed of the vacancy.

52.     Defendant, through his agents, falsely claimed that they had no vacant position in their answers to discovery at the MSPB.

> **INTERROGATORY NO. 12:** If you claim or contend that APPELLANT was not qualified for his position as a TR-0083 Police Officer and/or any other detail or assignment he performed during his employment with the AGENCY, STATE THE BASIS for your claim or contention.

> ANSWER: The Agency had no business need for a temporary worker with appellant's qualifications. At the time of appellant's removal, there was only one opening at the United States Mint at San Francisco for a GS_14 Financial Manager, for which the appellant did not qualify. There were no administrative duties available for any employee, including another employee who was requiring temporary light-duty work.

--------------

1  **INTERROGATORY NO. 19:** Please disclose all conversations or other communications

2  between AGENCY personnel and others regarding reasonable accommodation for the

3  APPELLANT during his employment.

4  ANSWER: Daniel Massola and Daniel Goldstein discussed appellant's request for

5  reasonable accommodation. Daniel Goldstein performed an inquiry to determine whether

6  there were any vacant positions at the United States Mint at San Francisco for which

7  appellant qualified.

8  See, Agency's Response to Appellant's Interrogatories, dated June 8, 2009.

9  53.   On October 22, 2008, the U.S. Mint issued a proposed removal notice, which relied on a

10  prior proposed suspension.

11  54.   In 1993, Defendant's agent, U.S. Mint Police Chief Pettit placed Plaintiff on AWOL

12  because he was unable to work overtime. Plaintiff could not work overtime because he was a

13  single father and was responsible for the care of his daughter, who was four years old at the time.

14  55.   In 1993, the AFGE Collective Bargaining Agreement provided that employees could not

15  be required to work mandatory overtime.   The Family Medical Leave Act was also violated by

16  defendant's actions. On November 10, 1994, the U.S. Mint agreed to "expunge all records

17  regarding the suspension from the Complainant's Official Personnel File, all supervisory files

18  and any other official file".

19  56.   By relying on the prior proposed suspension, the U.S. Mint violated it's own policies and

20  federal regulations as well as violated the terms of the settlement agreement by maintaining a

21  copy of the1993 proposed suspension in it's files at the Administrative Resource Center in West

22  Virginia. (HT Human Resources Rep. Goldsmith 151:1-9.

23  57.   In 1999, Plaintiff received an off-duty DUI. Plaintiff reported this incident to Mint

24  management including McCampbell and Chief Hulsey. He followed all of the rules by producing

25  the police report, paying his fine, completing the probation, participating in the EAP program and

26  joining a treatment center. (HT172:5-20) He discussed his alcoholism with Chief Hulsey and

27  was told that he would be "going to be working upstairs" doing background checks, using the

28  CLETS machine until his drivers license was reinstated. (HT 173, 185-186) Plaintiff was not

1    relieved of police officer duties during that year. (HT 189) Another disabled employee Officer

2    O'Donnell worked doing background checks from February 2000- February 2001. (HT 186)

3        58.     The Mint violated the Collective Bargaining Agreement Article 31-3 and 31-4

4    (Agency File Tab 2) which requires prompt disciplinary and adverse actions:

5            *Article 31-3 Disciplinary and adverse actions will be given to the employee within a*

6            *reasonable period of time after the occurrence of the alleged offense or when the*

7            *offense becomes known to management. Supervisors will discuss the matters that*

8            *will be the basis of disciplinary action with the employee no later than 15 days after*

9            *the event, the date the supervisor becomes aware of the event of the date an*

10           *actionable investigation report was completed.*

11   and progressive discipline:

12           *Article 31-4 Management will follow a course of progressive discipline to correct*

13           *the conduct of an offending employee. Major offenses, however, in themselves may*

14           *be cause for severe action, including removal. A supervisor will counsel an*

15           *employee, rather than issuing a written reprimand, in the first instance of a minor*

16           *offense, absent aggravating circumstances. This counseling will be aimed at*

17           *creating awareness on the part of the employee of his/her conduct deficiencies.*

18   59.    Defendant through his agents violated CBA Article 31-3 by failing to communicate with

19   the employee regarding disciplinary action within 15 days. The date the supervisor was informed

20   of the event was August 1, 2008. The investigation report, an email dated September 11, 2008

21   from Susan Gilliam to Daniel Massola, was forwarded to Massola on September 12, 2008. *See*

22   Agency File Tab 4h. Fifteen days from the receipt of that report is on or around September 27,

23   2008.

24   60.    The proposed removal was issued on October 22, 2008, more than 15 days after the

25   investigation report was completed. *See* Agency File Tab 4f.

26   61.    Defendant through his agents violated CBA Article 31-4, the progressive discipline

27   requirement. Plaintiff never had been disciplined for any alcohol-related conduct. Removing an

28   employee for an off-duty misdemeanor, under these circumstances violates this provision. The

*Salvador Mandujano v. Secretary of Treasury*
Complaint - Employment Discrimination                                                    Page 12

1  Initial Decision, page 14 acknowledged that "appellant's record [was regarded] as essentially free

2  of past agency imposed discipline."

### VII.

### FIRST CLAIM

### (DISCRIMINATION BASED ON VETERANS STATUS)

6  62.    Paragraphs 1 through 61 above are hereby incorporated by reference as though fully set

7  forth in this claim.

8  63.    Defendant has unlawfully discriminated against Plaintiff based on his veteran's status in

9  violation of the Veterans Equal Opportunity Act of 1998 (VEOA), 5 U.S.C. § 2302(B)(11).

10 64.    Plaintiff served as a member of the armed services and was honorably discharged after

11 three years of service. He is a member of a protected group based on his status as a 10% disabled

12 veteran.

13 65.    A Secretary vacancy existed in the San Francisco Mint Police Department in 2008 which

14 was not yet filled in August 2009.  Plaintiff was qualified for the vacant position.

15 66.    The Mint recruited to fill the Secretary vacancy from outside its own workforce. The Mint

16 did not give Plaintiff notice of the vacancy and deliberately stated to him that there were no

17 vacant positions.    Plaintiff should have been told of the position and allowed to apply but was

18 not informed of the vacancy.

19 67.    The Veterans Equal Opportunity Act (VEOA), 5 U.S.C. § 2302 provides that agencies

20 must allow eligible veterans to apply for positions under merit promotion procedures when the

21 agency is recruiting from outside its own workforce.

22 68.    The VEOA 5 U.S.C. § 2302(B)(11) provides that it is a prohibited personnel practice to:

23     (A)    knowingly take, recommend, or approve any personnel action if the taking of such

24             action would violate a veterans' preference requirement; or

25     (B)    knowingly fail to take, recommend, or approve any personnel action if the failure to

26             take such action would violate a veterans' preference requirement.

27

28

69.   Defendant DOT through his agents, wrongfully failed to notify Plaintiff that there was a vacant secretarial position for which he could be reassigned to as an alternative to being removed from his position.

70.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.

### VIII.

### SECOND CLAIM

### (UNLAWFUL DISCRIMINATION BASED ON DISABILITY)

71.   Paragraphs 1 through 61  above are hereby incorporated by reference as though fully set forth in this claim.

72.   Defendant DOT has unlawfully discriminated against Plaintiff MANDUJANO based on his disability in violation of Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Americans With Disabilities Act.

73.   The American With Disabilities Act Amendments Act, 42 U.S.C.§ 12101, effective January 1, 2009 was enacted to restore the intent of the Americans With Disabilities Act and directed the EEOC to correct their regulations to reflect the correct definition of "substantially limits". The EEOC Proposed Rules implementing the American With Disabilities Act Amendments Act, issued September 23, 2009, provide in pertinent part:

> "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. . . Individuals with these impairments can experience flare-ups that may substantially limit major life activities such as sleeping, breathing, caring for oneself, thinking, or concentrating. See 2008 House Judiciary Committee Report at 19-20."

74.   Alcoholism is a disease and  alcoholics are disabled  individuals who may not be denied the benefits of any government program solely because of their handicap is a disability. *See,* Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, defining alcoholism as  "an illness requiring treatment and rehabilitation" (42 U.S.C. § 4541 (1982)); the Rehabilitation Act of 1973, defining alcoholism as a "handicap" within the

1   meaning and protection of § 504 (29 U.S.C.A. §§ 794, 706(8); the Americans with Disabilities

2   Act of 1990, Public Law 101-336, which has been incorporated into the Rehabilitation Act,

3   provided that "for purposes of this title, the term "qualified individual with a disability" shall not

4   include any employee who is currently engaging in the illegal use of drugs, when the covered

5   entity acts on the basis of such use." *See* 42 USC 12114(a). Subsection 12114(b) provides:

6       RULES OF CONSTRUCTION – Nothing in subsection (a) shall be construed to exclude as

7       a qualified individual with a disability an individual who –

8           (2)    is participating in a supervised rehabilitation program and is no longer

9                  engaging in such use.

10  75.    Plaintiff MANDUJANO is  "an individual with a disability" pursuant to Section 501 of

11  the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791 and 29 U.S.C. §1614.203(a)(1),

12  which provides three separate grounds on which one can establish one is "an individual with

13  disability":

14          (i)    Has a physical or mental impairment which substantially limits one or more of such

15                 person's major life activities;

16          (ii)   Has a record of such an impairment; or

17          (iii)  Is regarded as having such an impairment.

18  76.    The EEOC Compliance Manual indicates that an impairment that substantially limits or is

19  expected to substantially limit a major life activity and whose "duration is indefinite and

20  unknowable or is expected to be at least several months" qualifies as a disability under the ADA.

21  Duration and Impact of Impairment, EEOC Compliance Manual (2007) § 902.4(d).  The

22  definition of a "qualified individual with a disability" as "an individual with a disability who,

23  with or without reasonable accommodation, can perform the essential functions of the

24  employment position that such individual holds or desires."

25  77.    Defendant DOT  has a legal obligation to provide reasonable accommodation to employees

26  who are disabled. *AFGE Local 51 v. Baker , Secretary of the Treasury*, (N D CA 1987) 677

27  F.Supp 636, 43 FEP cases 1393 (Although they are not required to find another job for an

28  employee who is not qualified for the job he or she was doing, they cannot deny an employee

1  alternative employment opportunities reasonably available under the employer's existing

2  policies.)

3  78.   Plaintiff MANDUJANO is and has been an individual with a disability at all times relevant

4  to this action.

5  79.   A qualified individual with a disability is an individual with a disability who satisfies the

6  requisite skill, experience, education and other job-related requirements of the position she holds

7  or desires, and who with or without reasonable accommodation, can perform the essential

8  functions of the position. 29 C.F.R. § 1630.2(m).

9  80.   Plaintiff MANDUJANO is and has been a qualified individual with a disability at all times

10  relevant to this action.

11  81.   Defendant DOT, through his agents, received Plaintiff's request for reasonable

12  accommodation.

13  82.   Defendant DOT is an agency is required to make reasonable accommodations for the

14  known physical and mental limitations of an otherwise qualified individual with a disability

15  unless the agency can show that accommodation would cause an undue hardship.

16  83.   Defendant DOT, through his agents, failed to provide reasonable accommodation to

17  Plaintiff MANDUJANO.

18  84.   The reasonable accommodations requested by Plaintiff MANDUJANO, namely

19  reassignment to a vacant position, would not cause an undue hardship to Defendant DOT.

20  85.   Defendant DOT failed to engage in the interactive process after Plaintiff MANDUJANO

21  provided them with the request for reasonable accommodation.

22  86.   Defendant DOT, through his agents, engaged in conduct that constituted discrimination

23  against Plaintiff MANDUJANO based on his disabilities and thereby created the intolerable

24  working conditions.

25  87.   Defendant DOT through his agents, wrongfully removed Plaintiff as a result of the  failure

26  to provide reasonable accommodation.

27  88.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary

28  damages as a result of defendant's discriminatory practices unless the Court grants relief.

1

## IX.

## THIRD CLAIM

### (UNLAWFUL DISCRIMINATION BASED ON RACE/NATIONAL ORIGIN)

89.    Paragraphs 1 through 61 above are hereby incorporated by reference as though fully set forth in this claim.

90.    Defendant has unlawfully discriminated against Plaintiff based on his race-national origin (Mexican-American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 *et seq.* as amended.

91.    Plaintiff is a member of a protected group based on his race-national origin (Mexican-American).

92.    Defendant considered Plaintiff qualified for his position as a Police Officer at all times relevant to this case.

93.    Defendant treated Plaintiff less favorably than similarly situated employees who are not Mexican-American.

94.    Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his protected group status (Mexican-American) in violation of Title VII.

95.    Defendant has a pattern and practice of violating federal law, rules and regulations in the use of disciplinary, performance and promotion procedures which deny Mexican-American employees employment opportunities on the basis of their race/national origin, in violation of Title VII.

96.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.

## VII.

## FOURTH CLAIM

### (VIOLATION OF THE CIVIL SERVICE REFORM ACT)

97.    Paragraphs 1 through 61 above are hereby incorporated by reference as though fully set forth in this claim.

98.   The Civil Service Reform Act (CSRA), 5 U.S.C. §7703, *et seq*. the burden of proof is on the agency to establish 1) the validity of the charges, 2) the nexus between off-duty conduct and the efficiency of the service, and 3)  the appropriateness of the penalty, by preponderant evidence.   Defendant, through his agents failed to establish their burden of proof.

99.     The evidence before the MSPB failed to establish nexus because the conduct charged did not involve egregious circumstances, Plaintiff's conduct was not directly opposed to the agency's mission, and Defendant did not show that Plaintiff's conduct adversely affected office morale and efficiency.

100.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.

## X.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MANDUJANO, respectfully prays that this Honorable Court grant the following relief:

1.     Issue a permanent injunction:

a.     Requiring defendants to abolish unlawful practices of employment discrimination and retaliation which violate the Title VII of the Civil Rights Act, Rehabilitation Act, as amended by the ADA-AA,  Veterans Equal Opportunity Act and Civil Service Reform Act, as amended by the Back Pay Act;

b.     Requiring allocation of significant funding and trained staff to implement all changes within two years;

c.      Requiring removal or demotion of all managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints or to take effective action to stop and deter prohibited personnel practices against employees;

d.     Establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

e.      Creating a process for the prompt investigation of harassment and reprisal
complaints separate from the agency's process;

f.      Requiring mandatory and effective training for all employees and
managers on discrimination and retaliation issues, investigations and appropriate
corrective actions; and,

g.      Eliminating the backlog of current EEO cases alleging discrimination,
harassment and reprisal.

2.      Issue an order requiring Defendant to retroactively restore Plaintiff to his position
as Police Officer, and expunge his personnel file of all negative documentation.

3.      For such damages, including back pay, front pay and benefits, pre-judgment
interest as Plaintiff is entitled to under the Veterans Equal Opportunity Act,
Rehabilitation Act, as amended by the ADA-AA, Title VII of the Civil Rights Act,  and
Civil Service Reform Act, as amended by the Back Pay Act.

4.      For other and further damages, including compensatory damages for Plaintiff
emotional distress, as may be proven at trial;

5.      For an order commanding defendants and each of them to cease and desist from
any employment practice which discriminates against Plaintiff or others on the basis of
his race/national origin, disability and veterans status against the person because he
complained about such discrimination;

6.      For an award of costs of suit including reasonable attorney's fees, including fees
under 29 U.S.C. § 216(b); and

7.      For such other and further relief as the Court may consider just and proper.

Respectfully submitted,

/s/ Electronic Signature Authorized

DATED March 24, 2010          By:      _____
MARY DRYOVAGE
Law Office of Mary Dryovage

1

## DEMAND FOR TRIAL BY JURY

2        Plaintiff hereby demands a jury trial for each claim herein for which he has a right to a

3    jury.

4                                        Respectfully submitted,

5                                        /s/ Electronic Signature Authorized

6    DATED: March 24, 2010          By:  _____
                                         MARY DRYOVAGE
7                                        Law Office of Mary Dryovage

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SALVADOR MANDUJANO,<br>Appellant, | DOCKET NUMBER<br>SF-0752-09-0228-I-1 |
| v. | |
| DEPARTMENT OF THE TREASURY,<br>Agency. | DATE: February 24, 2010 |

Mary Dryovage, Esquire, San Francisco, California, for the appellant.

Danae Remmert, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mary M. Rose, Member

### FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d).

# EXHIBIT A

Therefore, we DENY the petition for review.[*] The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request the Equal Employment Opportunity Commission (EEOC) to review this final decision on your discrimination claims. *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). You must send your request to EEOC at the following address:

---

[*] In reaching this conclusion, we have considered the appellant's November 24, 2009 supplement to his petition for review. With respect to the appellant's new evidence on review, restoration of the appellant's driver's license does not provide a basis for finding that the charges should be reversed. *See Benally v. Department of the Interior*, 71 M.S.P.R. 537, 540 (1996). Thus, the appellant's new evidence is not material and, therefore, does not provide a basis for granting review. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

We also note that, in finding that there were no similarly situated employees who were treated less harshly than the appellant, the initial decision states that "the appellant and the comparison employee must have been supervised by the same individual." Initial Decision at 10. Subsequent to the issuance of the decision, the Court of Appeals for the Federal Circuit found that a claim of disparate treatment analysis does not necessarily require that the comparator employee is supervised in the same chain of command as the appellant. *See Williams v. Social Security Administration*, 586 F.3d 1365, 1368-69 (Fed. Cir. 2009). Similarly, the EEOC has indicated that, although working for the same supervisor is normally an important factor in conducting disparate treatment analysis, it is not always dispositive in determining if a claimant is similarly situated to a comparator employee. *See Ferrell v. Potter*, EEOC Appeal No. 0120064642, 2008 WL 2571311, slip op. at *3, (E.E.O.C. June 17, 2008). *See, e.g., Humphries v. COBCS West, Inc.*, 474 F.3d 387, 404-05 (7th Cir. 2007). Nevertheless, we find that that the initial decision properly determined that the comparison employees raised by the appellant were distinguishable from him based upon all of the relevant aspects of this case. Therefore, the administrative judge did not make an error of law on this issue that affects the outcome of this appeal.

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, DC 20036

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f); 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request the United States Court of Appeals for the Federal Circuit to review this final decision on the other

issues in your appeal. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's

"Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

1

2   SALVADOR MANDUJANO,                     Docket No.

3                  Plaintiff,

4   v.

5   TIMOTHY F. GEITHNER,                    **CERTIFICATE OF SERVICE**
    SECRETARY OF TREASURY
6   (U.S. MINT),

7                  Defendant.

8

        I am a citizen of the United States and have an office in the County of San Francisco; I
9
    am over the age of eighteen years and not a party to the above-entitled action; my address is 600
10
    Harrison Street, Suite 120, San Francisco, CA 94107.
11
        On March 24, 2010, I served the within COMPLAINT, SUMMONS, CIVIL COVER
12
    SHEET, on the parties in said action by MAILING a true copy thereof enclosed in a sealed
13
    envelope, first class postage fully prepaid to the following address:
14

15          TIMOTHY F. GEITHNER
            SECRETARY OF THE TREASURY
16          1500 Penn. Avenue NW
            Washington, DC 20220        Certified Mail No. 7003 3110 0001 4475 5883
17

18          U. S. ATTORNEY GENERAL,
            U.S. DEPARTMENT OF JUSTICE,
19          Main Building, Room 51
            10th and Constitution Ave. N.W.
20          Washington, D.C. 20530      Certified Mail No.  7003 3110 0001 4475 5890

21          Assistant U.S. Attorney
            Civil Division 9th Floor
22          450 Golden Gate Avenue
            San Francisco, CA 94102      via hand delivery
23
        I declare under penalty of perjury that the foregoing is true and correct and was
24
    executed on March 24, 2010 at San Francisco, California.
25

26                                          _____

27

28