UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| SALVADOR MANDUJANO, | No. C 10-01226 LB |
| Plaintiff, | **ORDER FOR INDEPENDENT PSYCHIATRIC EXAMINATION** |
| v. | |
| TIMOTHY F GEITHNER, | **[ECF No. 40]** |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Salvador Mandujano, a former United States Mint Police Officer, sued his former employer after he was fired in 2008 for failure to maintain a driver's license and sustaining a conviction for driving under the influence of alcohol. Complaint, ECF No. 1 at 1, ¶ 1, and 4, ¶ 12.[1] Mandujano alleges wrongful discharge on, among other grounds, his alcoholism disability, and he seeks damages that include emotional distress damages. *Id*. at 1-2, ¶ 2, and 19. Defendant Timothy Geithner now seeks an independent psychiatric examination under Federal Rule of Civil Procedure 35 on the ground that the government is entitled to evaluate Mandujano's disability claim and his claim for mental distress damages. Motion, ECF No. 40 at 1-2; Reply, ECF No. 49 at 2-3.

The court grants the motion for an independent psychiatric examination.[2]

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

[2] The parties asked the court to decide the issue without oral argument. *See* ECF No. 46.

ORDER (C 10-01226 LB)

## II. ADDITIONAL FACTS RELEVANT TO MOTION

Mandujano served as a U.S. Mint Police Officer in San Francisco, California, from 1990 until his removal on December 31, 2008. Complaint, ECF No. 1 at 1. Mandujano alleges that he had a disability based on his history of alcoholism. *Id.* He further alleges that Geithner had a duty to accommodate his disability and that Geithner did not do so. *Id.* at 8-9, 14-16. Mandujano seeks, among other things, damages to compensate for his "emotional distress." *Id.* at 19.

In his deposition, Mandujano elaborates on how the loss of his job impacted his life. Exh. G to Declaration of Melanie L. Procter, ECF No. 40-1 at 35-39. He described himself as devastated, afraid of the unknown, scared of not making it in life by not having a job, house, car, or money to buy food, and intimidated by the fact that he might have a problem that he cannot fix. *Id.* at 35. He grew a beard to try to hide, he lost sleep (and got only about three hours of sleep until he got a job again in March 2010), and he lost approximately 15 pounds. *Id.* at 36, 38-39. He has migraines, which are triggered by his stress. *Id.* at 37 (describing interplay between 10 percent disability in his back, inflammation, stress, and the migraines).

## III. DISCUSSION

Geithner seeks an order compelling Mandujano to submit to an independent mental examination under Federal Rule of Civil Procedure 35. Motion to Compel, ECF No. 40 at 2. Mandujano objects, essentially arguing that in an employment case like this, emotional distress claims do not put a plaintiff's mental condition at issue. *See* Opposition, ECF No. 48 at 2-5, 9-11. He also challenges the conditions proposed by the government. *Id.* at 6, 8-10.

As set forth in section A, below, the court orders the examination because Mandujano claims wrongful termination based on an alcoholism disability and claims damages for emotional distress. The court addresses conditions of the examination in section B.

### A. Rule 35 Examination is Appropriate

Federal Rule of Civil Procedure 35(a) provides the following:

> The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

Courts construe Rule 35 liberally in favor of granting discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964). To justify a mental examination under Rule 35, Geithner must demonstrate the following: (1) Mandujano placed his mental condition "in controversy;" and (2) "good cause" exists for the examination. *Id.* at 118-19.

**1.  Condition In Controversy**

A plaintiff's mental or physical condition is "in controversy" when the condition is the subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, No. C 06-5444 JW (RS), 2007 WL 1593224, *1 (N.D. Cal. June 1, 2007) (citation omitted). Courts will order a mental examination when, in addition to emotional distress, cases involve one or more of the following: (a) a claim for intentional or negligent infliction of emotional distress; (b) an allegation of a specific mental or psychiatric injury or disorder; (c) a claim of unusually severe emotional distress; (d) a plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (e) plaintiff's concession that his or her mental condition is in controversy within the meaning of Rule 35. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995).

Here, the case involves Mandujano's claim of discrimination based on his alleged alcoholism disability, and he also asks for emotional distress damages. His deposition elaborates on his mental distress damages claim and alleges loss of sleep, migraines, weight loss, fear, growing a beard to hide, and other severe anxiety. *See* Exh. G to Proctor Declaration, ECF No. 40-1 at 35-39. This is not a garden-variety claim where a plaintiff seeks emotional distress damages only as an adjunct to other claims. *See Haqq*, 2007 WL 1593224 at *2; *Ayat v. Societe Air France*, No. C 06-1574 JSW (JL), 2007 WL 1120358, *4 (N.D. Cal. Apr. 16, 2007) (plaintiff sought damages for "loss of past and future earning capacity, fear and terror, emotional distress, discomfort, anxiety, [and] loss of enjoyment of life" that court held "could indicate an unusually severe emotional distress;" this and an ongoing mental illness put plaintiff's mental condition in controversy); *Batts v. County of Santa Clara*, No. C08-00286 JW (HRL), 2009 WL 2706397, *2 (N.D. Cal. Aug. 25, 2009). By basing his claim on a claim of disability relating to alcoholism and by seeking damages based on significant mental distress, Mandujano has placed his mental state in controversy, and the government is

1 entitled to an independent examination.

2 Mandujano nonetheless argues – without citation to any authority – that he has not placed his
3 mental condition at issue because alcoholism is a physical (as opposed to a mental) condition. *See*
4 Opposition, ECF No. 48 at 5. The court rejects that conclusory argument. Mandujano provides no
5 authority for his position that alcoholism is a physical condition or that it is *exclusively* a physical
6 condition. And contrary to his argument, the American Medical Association endorses the "dual
7 classification of alcoholism under both the psychiatric and medical sections of the International
8 Classification of Diseases." The American Medical Association,
9 http://www.ama-assn.org/ama1/pub/upload/mm/388/alcoholism_treatable.pdf (last visited Mar. 7,
10 2011). Case law also generally treats alcoholism (at least in part) as a mental disease. *See, e.g.,*
11 *Franklin v. Johnson*, 290 F.3d 1223, 1237 (9th Cir. 2002) (referring to "alcoholism or other mental
12 disease").

13 The "in controversy" prong is met. *See Turner*, 161 F.R.D. at 97.

14 **2. Good Cause**

15 Good cause generally requires showing specific facts justifying discovery. *See Haqq*, 2007 WL
16 1593224 at *2. Factors that are relevant to determining whether good cause exists include, but are
17 not limited to, the following: the possibility of obtaining desired information by other means;
18 whether plaintiff plans to prove his claim through testimony of expert witnesses; whether the desired
19 materials are relevant; and whether plaintiff claims ongoing emotional distress. *See Franco v.*
20 *Boston Scientific Corporation*, No. 05-CV-1774 RS, 2006 WL 3065580, *1(N.D. Cal. Oct. 27,
21 2006).

22 The bottom line is that this case is about wrongful termination based on a disability involving
23 alcoholism, and Mandujano claims significant emotional distress. *See* Complaint, ECF No. 1; Exh.
24 G, Mandujano Deposition, ECF No. 40-1 at 35-39. This is good cause for the examination. *See,*
25 *e.g., Kob v. County of Marin*, No. C 07-2211 JL, 2009 WL 3706820, *3 (N.D. Cal. Nov. 3, 2009);
26 *Franco*, 2006 WL 3065580 at *1.

27 **B. Conditions of Order**

28 Mandujano argues generally that the government wants too broad an examination. Opposition,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   ECF No. 48 at 8-9.  More specifically, Mandujano also wants his lawyer present during the

2   examination.  *Id.* at 4.  Mandujano also raises general privacy objections, citing the Health Insurance

3   Portability and Accountability Act of 1996 (HIPAA).  *Id.* at 4.  In the next three sections, the court

4   rejects the objections to the scope, denies the request for the presence of Mandujano's lawyer (given

5   the videotaping), and rejects the privacy objections.

**1. Scope of the Examination**

An order for a physical or mental examination must contain the following: (1) the designation of the examiner; (2) the time and place of the examination; and (3) the manner, conditions, and scope of the examination.  Fed. R. Civ. P. 35(a)(2)(B).

Mandujano's main objection (besides the "in controversy" and "good cause" objections addressed in the previous section) is that the government does not state what tests are planned and seeks information that spans his life.  Opposition, ECF No. 48 at 8-9.  The government seeks the following in its motion and its proposed order:

> The examiner should be provided wide latitude to conduct a thorough inquiry, including but not limited to evaluation and history of the mental illnesses alleged, past psychiatric history, general medical and surgical history, history of substance abuse, inquiry into the patient's psychosocial and development history, relationship and marital history litigation history, educational history, social and occupational history, family history, a complete review of symptoms and depressive signs, current living situation, and exploration of other causes for the condition.
>
> \*          \*          \*
>
> The examiner should be allowed to conduct recognized and appropriate psychological testing, at the discretion of the examiner.  The specific tests to be administered will be revealed at the time of the examination.

ECF No. 40 at 4; *see also* Proposed Order, ECF No. 40-3 at 1-2.

Mandujano argues that this proposed examination is so broad that it fails to meet Rule 35's command that the scope of the examination be specified, and he also argues that the government should disclose the psychological tests or other examination materials in advance.  Opposition, ECF No. 48 at 8-10.  The scope of the proposed examination, however, is reasonably related to Mandujano's disability claim and the mental distress damages he claims.  *See Schlunt v. Verizon*, No. 3:05-CV-666-J-25MCR, 2006 WL 1643727, \*4 (M.D. Fla. Jun. 12, 2006).  In his declaration, the examining psychiatrist describes how the disability and the facts about severe emotional distress

1  require an evaluation of his functioning before the alleged discriminatory acts (including a personal
2  history, a work history, and a medical and psychiatric history), an inquiry about the events that
3  caused the current emotional stress, a mental status examination, and neurocognitive and
4  psychological testing. *See* Levy Declaration, ECF No. 40-2 at 1-5 (describing at length the scope of
5  the examination and the reasons for it). This specificity is sufficient, and the government does not
6  need to disclose in advance the precise tests it will use. *See Ragge*, 165 F.R.D. at 609 (refusing to
7  order advance disclosure of tests). The government "is entitled to discover what other causes, if any,
8  there are for plaintiff's claimed mental distress and psychological injuries." *See Batts,* 2009 WL
9  2706397 at *2. The court "does expect that the examiner will act professionally and not subject
10 [Mandujano] to unnecessary testing or inquiry." *See Franco*, 2006 WL 3065580 at *2.

11     Without citing any authority, Mandujano also argues that the proposed examiners are not
12 qualified to conduct the proposed examination because they are not psychologists or psychiatrists
13 and because their respective curricula vitae were not provided. Opposition, ECF No. 48 at 6. The
14 government responded that there is no authority requiring the doctors' credentials to be established
15 when it seeks a mental examination but nonetheless submitted the curriculum vitae of its examining
16 psychiatrist and psychologist with its reply brief. Appendix A to Government's Reply Brief, ECF
17 No. 49-2 (curriculum vitae for Mark I. Levy, M.D., D.F.A.P.A., and Sarah A. Hall, Ph.D.) Nothing
18 in the record suggests any valid objection to either doctor. *See, e.g., Ragge*, 165 F.R.D. at 609 (court
19 not required to accept defendant's proposed physician but appoints different physician only if the
20 plaintiff raises a valid objection); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 26 (D.Conn. 1994) (conflict
21 of interest is a valid objection); *Powell v. United States*, 149 F.R.D. 122 (E.D. Va.1993) (rejecting
22 plaintiff's argument that examiner was biased because he was regularly employed by insurance
23 companies and defendants to perform medical examinations); *Nicholas v. United Air Lines, Inc.*, No.
24 C09-02089 RS (HRL), 2010 WL 1759459, *1 (N.D. Cal. Apr. 29, 2009) (permitting a psychiatrist to
25 utilize the results of neuropsychological testing to develop an opinion)*; Kob*, 2009 WL 3706820 at
26 *7 (ordering a Rule 35 examination to be performed by Levy);

27     **2. Length and Taping of Examination; Attendance of Lawyer**
28     As part of his argument that the exam exceeds Rule 35's permissible scope, Mandujano notes

ORDER (C 10-01226 LB)

6

UNITED STATES DISTRICT COURT
For the Northern District of California

that the government contemplates four to six hours for the psychiatric portion of the examination and eight hours for the psychological examination. Opposition, ECF No. 48 at 4. He then observes that the manner of the examination is invasive because the doctors plan to videotape it. *Id.*; *see* Levy Declaration, ECF No. 40-2 at 4 (Dr. Levy plans to videotape the psychiatric examination in accordance with California Code of Civil Procedure § 2032(g)(2); a copy is available to Plaintiff through discovery; Plaintiff may conduct his own simultaneous recording if he wishes to). He then asserts that because the examination is like an adversarial proceeding, his lawyer should be present to "test the accuracy of the examiner's notes or recollections[] and preserve the atmosphere of the examination." Opposition, ECF No. 48 at 9.

To the extent that Mandujano objects to the length of the examination, the court may specify and limit the timing of the examination. *See* Fed. R. Civ. P. 35. "Courts sometimes refuse to limit the time or structure of psychological exams when they find that such limits 'would subvert the truth finding function inherent in Rule 35 examinations.'" *Nicholas*, 218 F.R.D. at 124 (quoting *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 202 (N.D. Tex.1995). That is not the case here. The government contemplates an examination over two days, with four to six hours with appropriate rest breaks for the psychiatric examination and up to eight hours with breaks for the psychological testing. *See* Levy Decl., ECF No. 40-2 at 2-3. The declaration explains the need for the time, and Mandujano provides no analysis supporting his position.

Mandujano does not object to the videotaping specifically but instead cites it as part of his argument that the process is invasive and adversarial, and his attorney ought to be there. The California statute permits the recording of the mental examination by either the examiner or examine. *See* Calif. Code Civ. P. § 2032.530; *see* Levy Declaration, ECF No. 40-2 at 4 (examiner will record; Mandujano may if he wishes). That allows a plaintiff to address concerns about any improper questions or techniques. *See T.B. ex rel. G.B. v. Chico Unified School Dist.*, No. CIV S-07-0926-GEB-CMK, 2009 WL 837468 at *1 (E.D.Cal. Mar. 26, 2009). Courts generally prohibit third-party observers (including counsel) from attending a mental examination because of the potential for interference, intrusion, or contamination of the process. *See, e.g., Ragge*, 165 F.R.D. at 609-10 (collecting cases); *Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("The weight of

ORDER (C 10-01226 LB)   7

federal authority, however, favors the exclusion of the plaintiff's attorney from a Rule 35 examination absent a compelling reason."); *Ayat,* 2007 WL 1120358 at *8; *Baba-Ali v. City of New York*, No. 92-CIV-7957, 1995 WL 753904, *3 (S.D.N.Y. Dec. 19. 1995)*; cf.* Calif. Code Civ. P. 2032.510 (permitting counsel's attendance at physical examination but not mental examination). Concerns about distortion or inaccuracies can be addressed by the videotaping or "through traditional methods of impeachment and cross-examination." *See Baba-Ali*, 1995 WL 753904 at *3.

**3. Privacy**

Without citing any authority or providing any analysis, Mandujano argues conclusorily that ordering an examination violates HIPAA. *See* Opposition, ECF No. 48 at 4. Mandujano has placed his mental health at issue. Moreover, in *Schlagenhauf*, the Supreme Court rejected a challenge to a Rule 35 examination based on a general right to privacy. *See* 379 U.S. at 114; *see also Ortiz v. Potter*, 2010 WL 796960, *5 (E.D. Cal. Mar. 5, 2010) (rejecting privacy challenge); *Tan v. City and County of San Francisco*, 2009 WL 594238, *3 (N.D. Cal. Mar. 4, 2009); *Enwere v. Terman Associates, L.P.*, No. C 07-1239 JF (PVT), 2008 WL 5146617, *2 (N.D. Cal. Dec. 4, 2008). Moreover, Mandujano's privacy rights are protected by the heightened discovery requirements – as discussed above – that must be met to compel a Rule 35 examination. *See U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570*,* 577 (3rd Cir. 1980). Finally, the government's right to the information outweighs Mandujano's privacy rights. *See Ortiz*, 2010 WL 796960 at *5.

### IV.  DISCOVERY DISPUTES

The parties addressed this dispute by a noticed motion and were unable to follow the court's discovery procedures set forth in its standing order. The parties dispute exactly what happened about email and telephone messages. *See* ECF Nos. 40 at 1, 40-1, 48 at 3, 48-2 at 2-3, 49 at 1 n.1. As required by the federal rules and local rules and this court's standing order, the parties must meet and confer to try to resolve their disagreements. *See* Fed. R. Civ. P. 37(a)(1); Civil L. R. 37-1. This court also requires that after attempting other means of conferring such as letters, phone calls, or emails, lead counsel for the parties must meet and confer **in person.** The court provides a mechanism for doing this:

> Either party may demand such a meeting with ten days' notice. If the parties cannot agree on the location, the location for meetings shall alternate. Plaintiff's counsel shall select the first

location, defense counsel shall select the second location, and so forth.

At minimum, the meet-and-confer provides an opportunity to prepare the joint letter that this court requires in lieu of a formal motion. That letter process requires the following:

> If the parties do not resolve their disagreements through this procedure, the parties shall file a joint letter instead of a formal motion five days after lead counsels' in-person meet-and-confer. Lead counsel for both parties must sign the letter, which shall (a) include an attestation that the parties met and conferred in person regarding all issues before filing the letter, (b) describe each unresolved issue in a separate section, (c) summarize each party's position about each issue (with appropriate legal authority) in that separate section, and (d) provide each party's final proposed compromise about each issue in the separate section. (This process allows a side-by-side analysis of each disputed issue.) If the disagreement concerns specific discovery that a party has propounded, such as interrogatories, requests for production of documents, or answers or objections to such discovery, the parties shall either reproduce the question/request and the response in its entirety in their joint letter, or attach it as an exhibit to the joint letter. The Court then will review the joint letter and determine whether future proceedings are necessary.

The parties shall comply with this process for future discovery disputes and should alert the court of any communication breakdown before filing a formal motion so that the court can take appropriate steps to facilitate communication.

## V. CONCLUSION

The court **GRANTS** Geithner's motion to compel[3] and **ORDERS** Mandujano to submit to an independent psychiatric evaluation under Federal Rule of Civil Procedure 35:

1. Plaintiff must submit to a psychiatric examination by Mark Levy, M.D., and a psychological evaluation by Sarah Hall, Ph.D. The examination shall take place at Dr. Levy's offices (or if designated by the government, at Dr. Hall's offices) over two separate days, beginning at 9 a.m., with four to six hours for the psychiatric examination (with appropriate rest breaks) and up to eight hours for the psychological assessment (with appropriate breaks). The parties shall schedule the examinations by March 10, 2011, and the examinations must be take place by March 15, 2011 or

---

[3] Mandujano filed objections to defendant's reply. ECF No. 52. Although it was not entirely clear what it was intended to be, the court assumes it was a motion to strike. *See id.* at 1 ("Plaintiff moves to strike the factual statements in the Defendant's Reply to Motion to Compel an Independent Psychiatric Examination, as well as Appendix B, page 216 and 217 of the MSPB Hearing Transcript."). Because the court did not rely on any of the challenged statements in its final disposition of the motion, Mandujano's motion to strike is denied as moot.

1  such other date that the parties agree to by stipulation.[4]  If the parties cannot agree to a date, the
2  government shall submit a supplemental proposed order that includes all requirements of Federal
3  Rule of Civil Procedure 35(a)(2)(B), which requires the order to specify the time and place of the
4  examination.

5  2. The examiner shall conduct the examination as described in paragraphs 6 and 7 of Dr. Levy's
6  declaration at ECF No. 40-2. The court's adoption of the conditions is to provide the examining
7  doctors the latitude to conduct a thorough evaluation of Plaintiff's functioning before the alleged
8  discriminatory acts (including a personal history, a work history, and a medical and psychiatric
9  history), an inquiry about the events that caused the current emotional stress, a mental status
10 examination, and neurocognitive and psychological testing.

11 3. The examination may be videotaped and audiotaped by the examiner or the examinee,
12 provided that the audiotapes are at least 120 minutes in length.

13 4. Third parties (including Plaintiff's lawyer) may not be present during the examination itself.

**IT IS SO ORDERED.**

Dated: March 7, 2011

_____
LAUREL BEELER
United States Magistrate Judge

---

[4] The government's proposed order specified dates that were inconsistent with the parties' briefing schedule. The court sets dates and locations because Rule 35 requires it, but the court expects that the parties will change the dates to accommodate their schedules.

ORDER (C 10-01226 LB)            10