UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| SALVADOR MANDUJANO, | No. C 10-01226 LB |
| Plaintiff, | **ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| TIMOTHY F. GEITHNER, | **[ECF Nos. 39 & 41]** |
| Defendant. | |

# I. INTRODUCTION

Plaintiff Salvador Mandujano, a former United States Mint Police Officer, sued his former employer after he was fired in 2008 for failure to maintain a driver's license and sustaining a conviction for driving under the influence of alcohol. Complaint, ECF No. 1 at 1, ¶ 1, and 4, ¶ 12.[1] Mandujano alleges that his removal was discriminatory and violated the Veterans Employment Opportunity Act ("VEOA"), 5 U.S.C. § 3330a, *et seq.* and the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1201 *et seq. Id.* at 1, ¶ 2. These claims were reviewed initially by the Merit Systems Protection Board ("MSPB"), which upheld Mandujano's removal. *Id.* at 3, ¶ 6. Both Mandujano and Defendant Timothy Geithner now move for summary judgment on the non-discrimination claims. Plaintiff's Motion, ECF No. 41; Defendant's Motion, ECF No. 39. The court grants

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

Geithner's motion for partial summary judgment because there are no issues of material fact that would call into question whether (A) the MSPB's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) obtained without procedures required by law, rule, or regulation having been followed, or (C) unsupported by substantial evidence.

## II.  FACTS AND PROCEDURAL HISTORY

Mandujano began his employment as a United States Mint police officer in 1990. MSPB Hearing Testimony, AR 1066.[2] Mandujano's job description specified that his primary duty as a police officer was to "maintain law and order." U.S. Mint Police Officer Position Description, AR 21. The "line" (or main) operations of the job (as opposed to miscellaneous support duties) included "patrol work, vehicle operation control, and pedestrian traffic control." *Id.* Driving was listed among the physical demands of the position. AR 26. While Mandujano served as a police officer, he regularly certified that he had read the Mint Directives for police officers. AR 28-34. Included in those directives was Mint Directive 10D-20, which specified that "it [was] a condition of employment with the U.S. Mint Police that each officer possess a valid motor vehicle operator's license." Mint Directive 10D-20, AR 521.

On July 31, 2008, Mandujano was arrested on a misdemeanor driving under the influence (DUI) charge after he rear-ended another vehicle stopped at a stoplight. Incident Report, AR 180.[3] He informed his supervisor the next day. MSPB Hearing Testimony, AR 959. On August 22, 2008, Mandujano pleaded guilty at the preliminary hearing and provided the police report to Lieutenant Mayhew. Misdemeanor Complaint, AR 188; Letter from Chief McCampbell, AR 208. The next day, he was relieved of all law enforcement duties and reassigned. Letter from Sergeant Reisland, AR 178. On September 11, 2008, his license was suspended. Letter from Mandujano, AR 176; *see* AR 188 (DUI resulted in license suspension for at least a year). On October 22, 2008, Mandujano received the notice of proposed removal for failure to maintain his driver's license and driving under

---

[2] "AR" citations refer to pages of the administrative record that was manually submitted in this case with bates-stamps that ranged from DEF0001 - DEF1249.

[3] Mandujano had two previous DUI convictions in June 1994 and February 2000. AR 1074, 1091.

the influence. Notice of Proposed Removal, AR 168. On December 31, 2008, the deciding official, Inspector Massola, issued a decision on the proposed removal, upholding the charges and dismissing Mandujano. Decision on Proposed Removal, AR 142-48.

On January 20, 2009, Mandujano appealed his removal to the Merit Systems Protection Board ("MSPB"), alleging harmful procedural error, prohibited discrimination, an action taken not in accordance with the law, an action constituting prohibited personnel practices, and a violation of his veterans' preference. MSPB Appeal Form, AR 250-66. (The prohibited personnel practices claim refers to the disability and national origin discrimination claims. AR 282. The procedural error claim refers to alleged violations of the collective bargaining agreement. *Id.*) At a hearing on August 11, 2009, the MSPB considered the claims and heard testimony from Mandujano, Chief McCampbell, Inspector Massola, Sergeant Mucker, and Officer Mayhew. Testimony, AR 908.

On September 18, 2009, the MSPB issued an initial decision that sustained the removal. MSPB Initial Decision, AR 277. The MSPB found that it was "undisputed that [Mandujano] pled guilty and was convicted on August 22, 2008 of a misdemeanor for driving under the influence of alcohol on July 31, 2008, and that his California state driver's license was suspended for one year." AR 280. It thus sustained the charge of driving under the influence. *Id.* The MSPB also held that to prove the charge of failure to maintain a driver's license, the agency must show only that Mandujano lost his driver's license and that possession of a license was a condition of employment. *Id.* The MSPB found that position description established that possession of a driver's license was a condition of employment. AR 281. Based on the record evidence, the MSBP sustained this charge too. *Id.*

The MSPB then found that the agency had established a nexus between the charged conduct and Mandujano's ability to accomplish his duties. *Id.* Undisputed testimony established that Mint police officers were expected to drive for one hour of their shift. *Id.* Also, the MSPB found that breaking the law was antithetical to the agency's mission of enforcing the law based on Inspector Massola's testimony. AR 280-82.

The MSPB then found that Mandujano failed to prove his affirmative defenses by preponderant evidence. AR 282-84. The MSPB found that Mandujano failed to prove his veterans' preference

1 claims because he failed to identify with any specificity the veterans' preference that was violated.
2 AR 282-83.  The MSPB also rejected Mandujano's two claims of violations of Article 31 of the
3 collective bargaining agreement.  First, Mandujano claimed that the removal action was not given to
4 him within a reasonable time after the offense.  The MSPB rejected this claim, finding that the
5 evidence showed that Mandujano was in regular contact with his supervisors about the incident and
6 potential discipline starting the day after the incident and that the proposed removal one month after
7 the conviction was not an unreasonable time.  AR 283.  Second, Mandujano claimed that
8 management did not follow a course of progressive discipline, but the MSPB rejected the claim,
9 finding that the misconduct was sufficiently serious to warrant removal.  AR 284, 290.[4]

10 Finally, the MSPB reviewed the penalty imposed, determined that the agency considered all
11 relevant factors (including the offense, the disciplinary and work record, effect of the offense on the
12 ability to work, the clarity of notice of the rules violation or prior warnings, mitigating
13 circumstances, and the effectiveness of alternative sanctions to deter future misconduct), and found
14 that the penalty was reasonable.  AR 289-91 (noting, among other things, the agency's conclusions
15 that Mandujano could not perform his job without a license and that Mandujano's supervisors lost
16 confidence in him because of his "illegal, dangerous and reckless conduct" in the form of the DUI.)

17 Mandujano then filed this action, seeking judicial review of the MSPB's decision.  Complaint,
18 ECF No. 1.  Both Mandujano and Geithner now move for summary judgment on the non-
19 discrimination claims.  Plaintiff's Motion, ECF No. 41; Defendant's Motion, ECF No. 39.[5]

---

[4] The MSPB also rejected Mandujano's discrimination claims based on disability and national origin, but those are not part of the summary judgment motions and are not addressed here.

[5] Mandujano filed his opposition and reply brief late in violation of Civil Local Rule Local Rule 7-3 and this court's scheduling order.  *See* Civ. L. R. 7-3(a) (opposition filed not less than 21 days before the hearing date); Civ. L. R. 7-3(c) (reply filed not less than 14 days before the hearing date); Scheduling Order, ECF No. 46 at 1 (opposition briefs due February 24, 2011; reply briefs due March 3, 2011); Opposition, ECF No. 56 ( filed February 25, 2011); Reply, ECF No. 59 (filed March 4, 2011).  The late filings – while minimally tardy – still violate the local rules and this court's order, and Mandujano should comply with the briefing schedule and local rules for future filings.

### III. LEGAL STANDARD

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the non-moving party must go beyond the pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

**B. Standard of Review of MSPB Decision**

The Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1201 *et seq.*, provides the remedy for a federal employee appealing a termination. Ordinarily, a federal employee appeals first to the MSPB and then to the Court of Appeals for the Federal Circuit. 5 U.S.C. §§ 7513(d), 7701(a), 7703. But if a case is a "mixed case," meaning one involving both a personnel action normally appealable to the MSPB and a claim of discrimination, then judicial review is in the district court. 5 U.S.C. § 7703(b)(2); *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993). In mixed cases, the district court has jurisdiction to review both the lawfulness of the personnel action and the discrimination claim. *Romain v. Shear*, 799 F.2d 1416, 1420 n.1 (9th Cir.1986).

The district court reviews the discrimination claims *de novo* and the non-discrimination claims

under a deferential standard, setting aside the MSPB's decision regarding the nondiscrimination claims only if the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Washington*, 10 F.3d at 1428 (quoting 5 U.S.C. § 7703(c)); *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 774 n.5 (1985)); *Romain*, 799 F.2d at 1421.  The same standard applies to claims brought under the Veterans Employment Opportunity Act.  *See Davis v. Dep't of Defense*, 301 Fed. Appx. 968, 971-72 (Fed. Cir. 2008); *Abell v. Dep't of Navy*, 343 F.3d 1378, 1382-83 (Fed. Cir. 2003).

Mandujano nonetheless argues that the government misstates the standard of review in "mixed cases."  Plaintiff's Opposition, ECF No. 56 at 4.  Mandujano cites 5 U.S.C. §7703( c), cites no other authorities, provides no analysis, and apparently argues that the district court reviews *de novo* all claims in a mixed case.  *Id.*  Mandujano ignores clear Ninth Circuit authority establishing the standard of review.  *But see* Plaintiff's Reply, ECF No. 59 at 1 (acknowledges judicially-created deferential standard).

## IV.  DISCUSSION

The court addresses the cross summary judgment motions on the two claims at issue – the Veterans Employment Opportunity Act ("VEOA") and the Civil Service Reform Act ("CSRA") claims – in the following four sections: (A) the VEOA claim, (B) the CSRA claim regarding nexus and the reasonableness of the penalty; (C) the CSRA claim raising alleged violations of the collective bargaining agreement; and (D) the CSRA claim raising an alleged violation of the Family Medical Leave Act.  As to each section, the court finds that the MSPB's decision was supported by substantial evidence.  *See Washington*, 10 F.3d at 1428.[6]

### A.  Veterans Employment Opportunity Act Claim

Mandujano claimed before the MSPB that the U.S. Mint "did not properly consider his disabled

---

[6] Mandujano also raises arguments in his briefs related to his discrimination claims.  *See, e.g.,* Plaintiff's Opposition, ECF No.56 at 7-9.  These cross motions for summary judgment address only the non-discrimination claims, *see* Order, ECF Nos. 21 and 22, and thus the court does not consider these arguments except to the extent that the facts are relevant to the non-discrimination claims.

1  veterans' preference status" in removing him from his position.  AR 261; *see also* AR 259 (failure to
2  provide reasonable accommodation for a 10% veteran by reassigning him to duties that did not
3  involve driving while license was suspended; advances this remedy as alternative to firing).  In his
4  complaint and motion for summary judgment, Mandujano elaborates that the U.S. Mint violated his
5  veterans' preference by recruiting and filling a vacant secretarial position from outside the
6  workforce, not giving him notice of the vacancy, and deliberately stating that there were no vacant
7  positions.  Complaint, ECF No. 1 at 13-14, ¶ 62-70; Plaintiff's Motion, ECF No. 41 at 19-22.  The
8  government responds that he did not exhaust administrative remedies before the Department of
9  Labor and did not identify before the MSPB what veterans' preference that the U.S. Mint violated
10 (except to allege conclusorily that the agency had a policy of not firing disabled veterans).
11 Defendant's Opposition, ECF No. 54 at 5; Defendant's Motion, ECF No. 39 at 8.

**1. Exhaustion of Administrative Remedies**

The government asserts that Mandujano did not exhaust his administrative remedies before the Department of Labor.  *See* Defendant's Opposition, ECF No. 54 at 5 (citing 5 U.S.C. § 3330a(d) and cases); Defendant's Motion, ECF No. 39 at 7 (same).  Mandujano does not dispute that he did not file a claim with the Secretary of Labor, *see* AR 1128:21-22, but counters that exhaustion with the Department of Labor is not required and that the MSPB in any event heard his claim.  Plaintiff's Reply, ECF No. 59 at 4.

In light of the court's conclusion in the next section that the MSPB's decision on the merits was not arbitrary, capricious, or unsupported by substantial evidence, the court does not reach the exhaustion issue.  Also, as discussed in the next section, the CSRA also addresses prohibited personnel practices regarding personnel actions that violate a veterans' preference.  *See* 5 U.S.C. § 2302(b)(11).  For that reason, perhaps, the ALJ rejected the exhaustion argument when it was raised in the MSPB hearing.  Also, as discussed in the next section, the argument about the secretarial vacancy before the MSPB arose in the context of Mandujano's claim for reasonable accommodation of his disability**.**  *See* AR 1128 (as to the denial of the veterans' preference, the ALJ notes that the MSPB does have jurisdiction over a veterans' preference and that "[i]t isn't an adverse action" [because – read in the context of the discussion at AR 1127 – Mandujano's claim really was about

reasonable accommodation due to his disability]). Accordingly, the court addresses the merits of the claim.

### 2. Merits of VEOA Claim

Federal agencies use two processes to fill vacancies: the "open competitive examination" process and the "merit promotion" process. *See Joseph v. F.T.C.*, 505 F.3d 1380, 1381 (Fed. Cir. 2007) (citing 5 C.F.R. §§ 330.101, 332.101, 335.103). The relevant process here is the merit promotion process. *See* Plaintiff's Motion, ECF No. 41 at 19. "'[F]or all merit promotion announcements, . . . veterans . . . are eligible to apply.'" *Joseph*, 505 F.3d at 1381 (quoting 5 U.S.C. §§ 3304(f)(3)-(4)). "Veterans 'may not be denied the opportunity to compete for vacant positions for which the agency making the announcement will accept applications from individuals outside its own workforce under merit promotion procedures.'" *Id.* (quoting 5 U.S.C. § 3304(f)(1)); *see also* 5 U.S.C. § 2302(b)(11) (under the CSRA, agency cannot knowingly take, recommend, or approve (or fail to take, recommend, or approve) a personnel action that would violate a veterans' preference) .

The problem here is that Mandujano never identified to the MSPB what veterans' preference was violated. AR 282. The only thing he alleged before the MSPB was that the agency had a policy of not firing disabled veterans. *Id.* The MSPB held that this allegation was not supported by any evidence in the record. AR 282 n.2. Mandujano's attorney was advised that she needed to "further define this allegation at the hearing," and she did not. AR 282. Indeed, Mandujano testified that he had no idea what veterans' preference he was alleging. AR 283; *see* AR 1128:2-8 (Q: "What vet preference do you feel was violated?" A: "I - I - I have no idea."); *see also* Defendant's Motion, ECF No. 39 at 8 n.2 (Mandujano never claimed veterans' preference in employment application to U.S. Mint; checked "no preference" in answer to Question 22, which said "Place an 'X' in the box next to your Veteran Preference claim") (citing AR 13). The MSPB thus concluded that Mandujano failed to prove his claim by preponderant evidence. AR 283.

Moreover, Daniel Goldstein, an Employee and Labor Relationship Specialist for the Mint, did identify two positions: a GS-14 Financial Analyst and a GS-06 secretary position. AR 284-85. Mandujano did not dispute that he was not qualified for the financial analyst position. AR 285. Inspector Massola recalled that he found Mandujano not qualified for the secretarial position based

1   on his knowledge of Mandujano's duties. *Id.* Mandujano testified that he knew how to type and
2   helped the secretary temporarily in 1999, but the MSPB found that he did not apply for the position
3   when it was advertised, did not request the position as a re-assignment, and did not introduce into
4   evidence the vacancy announcement or other documents describing the qualifications for and duties
5   of the position. *Id.*; *see also* Testimony of Daniel Goldstein, AR 775:10-12 (all positions are
6   emailed out to all Mint employees). Thus, the MSPB concluded, Mandujano had not establish that
7   the agency erred by not offering him the position. AR 285.

8   Mandujano nonetheless states in his motion that the secretarial position "was never announced to
9   Plaintiff and he was not invited to apply for it." Plaintiff's Motion, ECF No. 41 at 20 (citing AR
10  1097, Mandujano's testimony). But no authority supports any argument that the Mint was required
11  to notify him personally of a position. His citation to *Abell v. Dep't of Navy* does not compel a
12  contrary conclusion. *See Abell*, 343 F.3d at 1379 (affirming MSPB decision of no VEOA violation
13  when (1) Navy cancelled vacancy announcement for position to which plaintiff applied and (2) Navy
14  failed to tell plaintiff of its efforts to pass him over for the vacancy). By contrast, other cases
15  support the conclusion that Mandujano has "'only a right to apply and an opportunity to compete'
16  under the merit promotion process." *Dean v. Consumer Product Safety Comm'n*, 548 F.3d 1370,
17  1373 (Fed. Cir. 2008).

18  In sum, the court concludes that there are no issues of material fact that the MSPB's decision –
19  that Mandujano failed to prove his VEOA claim and failed to show that the agency erred by not
20  offering him the position – was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in
21  accordance with law; (2) obtained without procedures required by law, rule, or regulation having
22  been followed; or (3) unsupported by substantial evidence." *Washington*, 10 F.3d at 1428 (quoting 5
23  U.S.C. § 7703(c)). Also, Mandujano's claim about the secretarial position really is about a failure to
24  offer him reasonable accommodation for his disability. *See* Plaintiff's Opposition, ECF No. 56 at 2.
25  That was how he characterized this claim in his appeal to the MSPB. *See* AR 259, 261. And that is
26  how the MSPB analyzed the claim about accommodation. *See* AR 284-85. Accordingly,
27  Mandujano may still address this issue in the context of his disability discrimination claim, which is
28  not part of this summary judgment determination.

**B. <u>Civil Service Reform Act Claim: Nexus and Reasonableness of Penalty</u>**

Mandujano claimed before the MSPB that the agency failed to establish a nexus between the charged conduct (the DUI) and Mandujano's ability to accomplish his duties, and the penalty (loss of his job) was unreasonable. AR 254; Plaintiff's Motion, ECF No. 41 at 12-13. The government counters that the record supports the MSPB's decision. *See, e.g.,* Defendant's Motion, ECF No 39 at 5-7.

The MSPB may set aside an agency action only if the agency's decision is not supported by a preponderance of the evidence. 5 U.S.C. § 2201(c)(1)(B). An agency may remove an employee if the removal will promote the efficiency of the service. 5 U.S.C. § 7513(a). The agency must establish the following: (1) the charged conduct occurred; (2) there is a nexus between the conduct and the efficiency of the service, and (3) the imposed penalty was reasonable. *See Pope v. United States Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997).

As the MSPB found, Mandujano was convicted of a DUI and lost his license for one year. AR 290. A nexus between the charged conduct was established because undisputed testimony established that Mint police officers were expected to drive for one hour of their shift, a task that is impossible without a license. AR 281. Also, breaking the law was antithetical to the agency's mission of enforcing the law. AR 280-82. In assessing the penalty, the MSP found, the agency considered all relevant factors (including the offense, past disciplinary and work record, mitigating factors, the effect of the offense on the ability to work, and the effectiveness of alternative sanctions to deter future misconduct) before imposing the penalty. AR 289-91.[7] The penalty, the MSPB

---

[7] The relevant factors are the twelve factors in *Douglas v. Veterans Administration,* 5 M.S.P.R. 280 (1981). They are as follows: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any

1 concluded, was reasonable. *Id.* (noting that Mandujano's supervisors lost confidence in him
2 because of his "illegal, dangerous and reckless conduct in the form of driving under the influence").
3 This establishes a sufficient nexus and the reasonableness of the penalty. *See Pope*, 114 F.3d at
4 1147.

5 Mandujano nonetheless argues that the off-duty conduct here cannot support Mandujano's firing
6 because it did not affect the agency's mission. Plaintiff's Motion, ECF No. 41 at 12 (citing *Doe v.*
7 *Dep't of Justice*, 565 F.3d 1375 (Fed. Cir. 2009). In *Doe*, the Federal Circuit held that the
8 surreptitious, non-criminal videotaping of consensual sexual encounters was not a basis for removal
9 of an FBI agent. 565 F.3d at 1380. The decision in *Doe* was based on the MSPB's failure to (1)
10 "articulate a meaningful standard as to when private dishonesty rises to the level of misconduct that
11 adversely affects the 'efficiency of the service'" and (2) "address the fact that the FBI's decisions to
12 sustain the charge and to impose the penalty of removal were influenced at least in part by the
13 assumed criminality of the behavior." *Id.* at 1380-81. In part, the court in *Doe* found that the FBI
14 agent's actions were not so egregious that a nexus between the off-duty conduct and the efficiency
15 of service could be presumed. *Id.* at 1381.

16 By contrast to *Doe*, Mandujano was convicted of a DUI crime, which the MSPB found was
17 contrary to the mission of U.S. Mint police officers and destroyed his supervisors' confidence in
18 him. AR 281, 289-91. Also, he lost his license and could not perform his job. AR 281. Substantial
19 evidence supports the MSPB's decision upholding the agency's decision. *See Washington*, 10 F.3d
20 at 1428; *Kugler v. Dep't of Agriculture*, 397 Fed.Appx. 634, 637 (Fed. Cir. 2010) (upholding the
21 Forest Service Job Corps Center's decision to fire a social services assistant after a DUI and
22 suspension of her commercial driver's license; substantial evidence demonstrated that her

---

applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *See id.* at 305-06.

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB
11

1  "misconduct caused legitimate safety concerns and caused her supervisor to lose confidence in [her]
2  abilities"); *Todd v. Dep't of Justice*, 71 M.S.P.R. 326, 330 (MSPB 1996) (sustained removal of
3  corrections officer based on off-duty DUI, failure to report arrest, and using his identification card in
4  a bid for "professional courtesy" upon his arrest).

5  In a similar vein, Mandujano also argues that this court may mitigate the penalty because it is
6  excessively harsh. ECF No. 41 at 13. Dismissal has found to be "excessively harsh only when the
7  offense committed was extremely minor." *See McClaskey v. U.S. Dept. of Energy*, 720 F.2d 583,
8  586 (1983) (contrasting a case where individuals was dismissed for using an official vehicle to run a
9  short private errand and the pending case where the individual committed a crime that had a negative
10 effect on his job performance). That is not the case here, where a Mint police officer lost the
11 driver's license that was necessary to his job and was convicted of a crime.

12 Mandujano also argues that the agency could not remove him based on the two prior DUIs in
13 1994 and 2000. Plaintiff's Motion, ECF No. 41 at 13. The government responds that this claim was
14 not raised in Mandujano's complaint. Defendant's Opposition, ECF No. 54 at 3 n.1. The argument
15 is part of Mandujano's nexus argument and is not really a separate claim. *Cf.* Complaint, ECF No. 1
16 at 18, ¶ 99 (alleging that the MSPB did not establish nexus). In any event, as the MSPB found, the
17 agency analyzed only the 2008 DUI charge and considered the 1994 and 2000 DUI convictions only
18 when imposing the penalty. AR 279 (prior DUI charges meant that alternative sanctions would not
19 deter future misconduct). The MSPB also explicitly considered only the 2008 DUI in determining
20 whether to sustain the charges of a DUI conviction and loss of license, and it considered the prior
21 DUIs only in determining the reasonableness of the penalty. *Id.* Thus, Mandujano's argument fails.

22 Finally, Mandujano argues that Inspector Massola did not consider mitigating factors under
23 *Douglas*, even though he said he did, and this is a "per se rule requiring [his] removal" that this court
24 should reverse. Plaintiff's Motion, ECF 41 at 14-15 (citing *Cunningham v. U.S. Postal Service*, 328
25 Fed. Appx. 646 (Fed. Cir. 2009) and the *Douglas* factors).[8] As discussed above on page 10, the

---

[8] The government points out that Mandujano did not raise this issue – and the collective bargaining and Family Medical Leave Act violations in sections C and D – as claims in his brief. Defendant's Opposition, ECF 54 at 6. Given that general allegations about the reasonableness of the

1 agency (in the form of Inspector Massola) did consider the *Douglas* factors. The MSPB then
2 evaluated that decision and found that Inspector Massola reasonably applied the factors. AR 291;
3 *see Douglas* Worksheet, AR 162. Mandujano really is arguing that the factors cut in his favor
4 because he reported the DUI. Plaintiff's Motion, ECF No. 41 at 15. Also, he suggests that another
5 officer was not fired after his gun was taken away after he was charged with a felony involving
6 dangerous acts and acts of terrorism. *Id.* at 16. These arguments do not change the facts that
7 Mandujano was *convicted* of a crime and lost the license he needed for his job. *See also* AR 631-32
8 (other office's situation involved different charges, no evidence of arrest, work in a different office,
9 and his subsequent death). Substantial evidence supports the MSPB's decision. *See Washington*, 10
10 F.3d at 1428.

## C. Civil Service Reform Act Claim: Collective Bargaining Agreement Violations

Mandujano claimed before the MSPB that the U.S. Mint violated Article 31 of the collective bargaining agreement in two ways: (1) the removal action was not given to him within a reasonable time after the offense, in violation of Article 31-3; and (2) management did not follow a course of progressive discipline, in violation of Article 31-4. AR 283-84, 290; *see* Complaint, ECF No. 1 at 12-13, ¶¶ 58-61 (setting forth these allegations); Plaintiff's Motion, ECF No 41 at 17-18. The government responds that Mandujano never raised this as a separate claim. Defendant's Opposition, ECF 54 at 6-7. These allegations arguably are part of the Civil Service Reform Act claim. *See* Complaint, ECF No. 1 at 17, ¶ 97 (incorporating factual paragraphs, including paragraphs 58 to 61, by reference). Substantial evidence supports the MSPB's rejection of the allegations about the collective bargaining agreement.

### 1. Article 31-3 and Reasonableness of Timing

Article 31-3 provides the following:

> Disciplinary and adverse actions will be given to the employee within a reasonable period of time after the occurrence of the alleged offense or when the

---

penalty were in the complaint, *see* ECF No. 1 at ¶ 98, specific arguments about the *Douglas* factors were raised and addressed before the MSPB, *see* AR 289-91, and the government addressed the issue on the merits and suffers no prejudice, *see* ECF No. 54 at 6-7, the court addresses and dismisses the argument.

> offense becomes known to management. Supervisors will discuss the matters that will be the basis of disciplinary action with the employee no later than 1.5 days after the event, the date the supervisor becomes aware of the event of the date an actionable investigation report was completed.

Complaint, ECF No. 1 at 12, ¶ 58. Mandujano argues that the timing is not reasonable because (a) the proposed removal was issued on October 22, 2008, more than fifteen days after August 1, 2008, when he told his supervisor of the DUI, or September 11, 2008, when the Mint received the investigative report, and (b) there is no evidence that his supervisors talked with him about disciplinary action before issuing the proposed removal on October 22, 2008. Plaintiff's Motion, ECF No. 41 at 17-18. The MSPB rejected this claim, finding that the evidence showed that Mandujano was in regular contact with his supervisors about the incident and potential discipline starting the day after the incident and that the proposed removal one month after the conviction was not an unreasonable time. AR 283. Specifically, Mandujano and his supervisor, Lieutenant Mayhew, communicated about the offense starting the day after the incident, and Mandujano was relieved of his law enforcement duties the day after he was convicted. AR 959; AR 178. As the MSPB concluded, a total of two months between incident and notice of removal (and one month between conviction and notice) is not unreasonable. AR 168, 283.

**2. Article 31-4 and Progressive Discipline**

Article 31-4 provides the following:

> Management will follow a course of progressive discipline to correct the conduct of an offending employee. Major offenses, however, in themselves may be cause for severe action, including removal. A supervisor will counsel an employee, rather than issuing a written reprimand, in the first instance of a minor offense, absent aggravating circumstances. This counseling will be aimed at creating awareness on the part of the employee of his/her conduct deficiencies.

Complaint, ECF No. 1 at 12, ¶ 58. Mandujano argues that the agency failed to take progressive discipline measures as required by the collective bargaining agreement. *Id.* at 12, ¶ 58; Plaintiff's Motion, ECF No. 41 at 18. The MSPB rejected the claim, finding that the misconduct was sufficiently serious to warrant removal. AR 284, 290. As the MSPB concluded, the criminal offense was inconsistent with the agency's mission and involved the loss of a driver's license necessary for the job. AR 280-84. Mandujano's citation of *Leazenby v. United States Postal Serv.,* 8 M.S.P.R. 384, 390 (MSPB 1981), does not compel a contrary conclusion. That case involved the

1  Postal Service's failure to consider favorably a mail handler's participation in a program for alcohol
2  rehabilitation. *Id.* By contrast, this case involves removal based on a crime and loss of credentials
3  needed for a job. And as discussed above on pages 10 and 11, other courts have affirmed removal
4  for violations of driving under the influence laws. *See, e.g., Kugler*, 397 Fed.Appx. at 637; *Todd*, 71
5  M.S.P.R. at 330.

**D. Civil Service Reform Act Claim: Family Medical Leave Act Allegation**

In his opposition brief, Mandujano alleges conclusorily that the proposed removal notice "refers to a prior FMLA violation, which was resolved in a settlement agreement." Opposition, ECF No. 56 at 10. He argues that this violates the Family Medical Leave Act ("FMLA") and that as a result, the removal action must be reversed. *Id.* (entire argument is three lines); *see* Complaint, ECF No. 1 at 11, ¶ 55 ("The Family Medical Leave Act was also violated by defendant's actions. On November 10, 1994, the U.S. Mint agreed to 'expunge all records regarding the suspension from the Complainant's Official Personnel File, all supervisory files and any other official file.'").

This argument is about a 1993 suspension that was expunged from Mandujano's file pursuant to a settlement agreement. AR 284. The agency and the MSPB did not consider it. AR 284, 290. Mandujano's FMLA allegation does not alter this court's conclusion that substantial evidence supports the MSPB's decision. *See Washington*, 10 F.3d at 1428.

**V. CONCLUSION**

The court **GRANTS** Geithner's motion for summary judgment as to Mandujano's first (VEOA) and fourth (CSRA) claims. The court **DENIES as moot** Mandujano's motion for summary judgment on these same claims.

This disposes of ECF Nos. 39 and 41.

**IT IS SO ORDERED.**

Dated: March 17, 2011

_____
LAUREL BEELER
United States Magistrate Judge

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB
15

UNITED STATES DISTRICT COURT
For the Northern District of California