UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

SALVADOR MANDUJANO,

Plaintiff,

v.

TIMOTHY F. GEITHNER,

Defendant.

No. C 10-01226 LB

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

**[ECF Nos. 69 & 73]**

# I. INTRODUCTION

Plaintiff Salvador Mandujano, a former United States Mint Police Officer, sued his former employer after he was fired in 2008 for failure to maintain a driver's license and sustaining a conviction for driving under the influence of alcohol. Complaint, ECF No. 1 at 1, ¶ 1, and 4, ¶ 12.[1] Mandujano alleges that his removal was discriminatory under the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, based on his alleged disability of alcoholism, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, based on his race/national origin. Mandujano also claimed that his removal violated the Veterans Employment Opportunity Act ("VEOA"), 5 U.S.C. § 3330a, *et seq.* and the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1201

---

[1] Citations are to the clerk's electronic case file (ECF) with pin cites to the electronic page numbers at the top (as opposed to the bottom) of the page.

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB

*et seq*. *Id.* at 1, ¶ 2. These claims were reviewed initially by the Merit Systems Protection Board ("MSPB"), which upheld Mandujano's removal. *Id.* at 3, ¶ 6. This court granted Geithner's motion for summary judgment and denied Mandujano's motion for summary judgment as to the non-discrimination claims. ECF No. 62. Both Mandujano and Defendant Timothy Geithner now move for summary judgment on the discrimination claims. Plaintiff's Motion, ECF No. 73; Defendant's Motion, ECF No. 69. The court grants Geither's summary judgment motion and denies Mandujano's motion as moot. As to Mandujano's Rehabilitation Act claim, summary judgment is appropriate because Mandujano did not provide facts to support his assertion that his drinking substantially limited one or more major life activities and Mandujano does not dispute that his dismissal was based on his driving under the influence conviction and subsequent loss of his driver's license. As to Mandujano's Title VII claim, summary judgment is appropriate because Mandujano did not demonstrate that his performance met his employer's legitimate expectations or that other employees with qualifications similar to his own were treated more favorably and Mandujano did not provide facts that support the inference that Geithner's reasons for firing Mandujano were merely pretext.

## II.  FACTS AND PROCEDURAL HISTORY

Mandujano began his employment as a United States Mint police officer in 1990. MSPB Hearing Testimony, AR 1066.[2] Mandujano's job description specified that his primary duty as a police officer was to "maintain law and order." U.S. Mint Police Officer Position Description, AR 21. The "line" (or main) operations of the job (as opposed to miscellaneous support duties) included "patrol work, vehicle operation control, and pedestrian traffic control." *Id.* Driving was listed among the physical demands of the position. AR 26. While Mandujano served as a police officer, he regularly certified that he had read the Mint Directives for police officers. AR 28-34. Included in those directives was Mint Directive 10D-20, which specified that "it [was] a condition of employment with the U.S. Mint Police that each officer possess a valid motor vehicle operator's

---

[2] "AR" citations refer to pages of the administrative record that was manually submitted in this case with bates-stamps that ranged from DEF0001 - DEF1249.

license." Mint Directive 10D-20, AR 521.

On July 31, 2008, Mandujano was arrested on a misdemeanor driving under the influence (DUI) charge after he rear-ended another vehicle stopped at a stoplight. Incident Report, AR 180.[3] He informed his supervisor the next day. MSPB Hearing Testimony, AR 959. On August 22, 2008, Mandujano pleaded guilty at the preliminary hearing and provided the police report to Lieutenant Mayhew. Misdemeanor Complaint, AR 188; Letter from Chief McCampbell, AR 208. The next day, he was relieved of all law enforcement duties and reassigned. Letter from Sergeant Reisland, AR 178. On September 11, 2008, his license was suspended. Letter from Mandujano, AR 176; *see* AR 188 (DUI resulted in license suspension for at least a year). On October 22, 2008, Mandujano received the notice of proposed removal for failure to maintain his driver's license and driving under the influence. Notice of Proposed Removal, AR 168. On December 31, 2008, the deciding official, Inspector Massola, issued a decision on the proposed removal, upholding the charges and dismissing Mandujano. Decision on Proposed Removal, AR 142-48.

### III. LEGAL STANDARD

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosures on file, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.* at 248-49.

The party moving for summary judgment has the initial burden of identifying those portions of the pleadings, discovery and disclosures on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need point out only "that there is

---

[3] Mandujano had two previous DUI convictions in June 1994 and February 2000. AR 1074, 1091.

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB

1  an absence of evidence to support the nonmoving party's case." *Id*. at 325.  If the moving party
2  meets this initial burden, the non-moving party must go beyond the pleadings and – by its own
3  affidavits or discovery – set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P.
4  56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
5  586-87 (1986).  If the non-moving party does not produce evidence to show a genuine issue of
6  material fact, the moving party is entitled to summary judgment.  *See Celotex*, 477 U.S. at 323.

A district court has no independent duty "to scour the record in search of a genuine issue of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

**B. <u>Standard for the Rehabilitation Act Claim</u>**

The Ninth Circuit has held that Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, provides the exclusive remedy for federal employees claiming discrimination based on disability. *Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds, Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990).  To state a prima facie case under the Rehabilitation Act, Mandujano must demonstrate that (1) he is a person with a disability (2) who is otherwise qualified for employment and (3) suffered discrimination because of his disability.  *Walton v. United States Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007) (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005)).

The Rehabilitation Act incorporates the standards of substantive liability set forth in the Americans with Disabilities Act ("ADA").  *Id.*; 29 U.S.C. § 791(g).  At the relevant time, the ADA defined "disability" as follows: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  *Id.* (citing 42 U.S.C. § 12102(2); *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004)); *see Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009) (2008 ADA Amendments do not apply to alleged conduct that occurred before January 1, 2009).

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB
4

///

## C. <u>Standard for the Title VII Claim</u>

Title VII proscribes discrimination based on race, sex, national origin, or protected EEO activity. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, Mandujano must show that (A) he belongs to a protected class, (B) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Noyes v. Kelly Services*, 488 F.3d 1163, 1168 (9th Cir. 2007). If he succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination. *Id.* at 804.

## IV. DISCUSSION

The court begins by discussing the elements of Mandujano's Rehabilitation Act claim. The court grants summary judgment in favor of Geithner as to Mandujano's Rehabilitation Act claim because Mandujano did not provide facts to support his assertion that his drinking substantially limited one or more major life activities or that he was fired for his alcoholism and not his conduct.

The court then addresses Mandujano's Title VII claim. The court grants summary judgment in favor of Geithner as to Mandujano's Title VII claim because Mandujano did not demonstrate that his performance met his employer's legitimate expectations or that other employees with qualifications similar to his own were treated more favorably and Mandujano did not provide facts that support the inference that Geithner's reasons for firing Mandujano were merely pretext.

## A. <u>Mandujano's Rehabilitation Claim</u>

### 1. Whether Mandujano Was Disabled

Mandujano argues that he is disabled because he had an impairment (alcoholism), Congress has indicated that it views alcoholism as a handicap, and numerous cases have found alcoholics to be covered by the ADA. Plaintiff's Motion, ECF No. 73 at 16-19. Mandujano also nakedly asserts that it is undisputed that he was disabled for purposes of the Rehabilitation Act based on his physical

impairments, record of impairments, and being "regarded as" having an impairment. Plaintiff's Opposition, ECF No. 77 at 9-10.[4]

Geithner argues that Mandujano cannot establish a genuine issue of material fact as to whether Mandujano was disabled because alcoholism is not a *per se* disability and Mandujano's own testimony establishes that his drinking did not substantially limit one or more major life activities. Defendant's Motion, ECF No. 69 at 14.

"[A]lcoholism is a protected disability under the ADA." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001). But this is not enough to prove that Mandujano was disabled as per the ADA's definition of the term. Instead, a "[d]rug addiction *that substantially limits one or more major life activities* is a recognized disability under the ADA." *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (emphasis added); *Currier v. Whim Co.*, No. C 04-01366 SI, 2004 WL 1212058, at *3 (N.D. Cal. May 25, 2004) ("Congress has not included alcoholism in the ADA as a per se disability, because, without more, it is not one."). Thus, even assuming that Mandujano is an alcoholic, he still needs to demonstrate that his alcoholism substantially limited one or more major life activities. *See Kittleson v. Sears, Roebuck and Co.*, CV. No. 10-00106 DAE BMK, 2010 WL 2485935, at *4 (D.Haw., June 15, 2010) (dismissing ADA suit where plaintiff failed to allege that his alcoholism substantially limited one or more major life activities).

Geithner notes that, in his October 2010 deposition, Mandujano testified that he never missed work as a result of drinking, did not report to work drunk, and never missed any important events for his children because of his drinking. Defendant's Motion, ECF No. 69 at 14 (citing Mandujano Deposition, Exh. J, ECF No. 71 at 125-26); Defendant's Opposition, ECF No. 76 at 4 (same); Defendant's Reply, ECF No. 78 at 2-3 (same).

Mandujano does not specify any major life activities nor does he direct the court to any testimony or other factual evidence that establishes that his drinking substantially limited one or more major life activities other than attaching his June 2011 declaration to his opposition brief and

---

[4] Mandujano offers no analysis or discussion of how he qualifies as disabled under the latter two prongs. And, in any case, Mandujano must still demonstrate that the impairment substantially limits a major life activity. *See Walton*, 492 F.3d at 1006.

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB

6

1  asserting that there might be additional evidence coming out of Geithner's expert witness reports.
2  Plaintiff's Reply, ECF No. 79 at 2-3.

3  In his reply brief, Geithner objects to Mandujano's June 2011 declaration to the extent that it
4  contradicts his previously given sworn testimony. Defendant's Reply, ECF No. 78 at 3. Geithner
5  notes that the Ninth Circuit has held that a party cannot create an issue of fact by contradicting prior
6  deposition testimony and asserts that Mandujano's declaration is a sham, designed to create an issue
7  of fact. *Id.* (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Kennedy v.*
8  *Bank of America Nat. Ass'n*, No. C 10–0868 CW, 2011 WL 1522380, at *8-9 (N.D. Cal. Apr. 21,
9  2011)). The court agrees with Geithner. Mandujano's June 2011 declaration was prepared to
10 support his opposition brief. ECF No. 77-2 at 1. He also states that his drinking affected his major
11 life activities, including his relationship with his children. *Id.* at 1-2. This contradicts his prior
12 deposition testimony and does not purport to either clear up any misunderstandings needing
13 clarification or to provide newly-discovered information. And he states that he lost his house
14 because of alcoholism, *id.* at 2, after refusing to produce requested documents about the loss of his
15 house, Exh. T, ECF No. 78-1 at 5. Accordingly, the court finds Mandujano's declaration to be a
16 "sham" as discussed by the Ninth Circuit in *Kennedy v. Allied Mutual Insurance Company*, and the
17 court rejects Mandujano's June 2011 declaration to the extent that it contradicts his previous sworn
18 testimony. *See* 952 F.2d at 266-67; *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540,
19 543-44 (9th Cir. 1975); *see also Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1059 (9th Cir.
20 2005) ("To survive summary judgment, an affidavit supporting the existence of a disability must not
21 be merely self-serving and must contain sufficient detail to convey the existence of an
22 impairment.").

23 Geithner also opposes Mandujano's request for leave to supplement his motion for summary
24 judgment with affidavits following the disclosure of Geithner's expert witness reports. Defendant's
25 Objection to Reply Evidence, ECF No. 80 at 1. Geithner first notes that the Rule 56(d) provides for
26 a *non-movant* to request relief from the court. *Id.* In this case, there are cross-motions for summary
27 judgment but Mandujano's request came in his reply brief. And, as Geithner points out, the briefing
28 schedule and expert discovery schedule have been known since April 4, 2011 but Mandujano did not

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB
7

request any extensions. *Id.* at 1-2.

Mandujano did not reply to Geithner's arguments but merely submitted the expert witness report with a short introduction that explained that the document was offered "to show that the defendant has no basis for claiming that plaintiff is not a 'person with a disability', based on his history of alcoholism, as this fact was admitted by their expert." ECF No. 81. Even if the court accepted the witness report as evidence, the cited statement still does not provide any evidence that Mandujano's claimed disability substantially limited any major life activities. Moreover, the court agrees with Geithner and rejects Mandujano's request to submit additional evidence following the disclosure of Geithner's expert witness reports, even if any additional submissions were limited to supporting Mandujano's opposition.

Mandujano does, by implication, suggest that the record evidence demonstrates that his drinking substantially limited a major life activity by referencing a Second Circuit case that listed driving as a part of caring for oneself. Plaintiff's Reply, ECF No. 79 at 2 (citing *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002)). But a number of courts have held that driving by itself does not constitute a major life activity under the ADA. *See, e.g., Kellogg v. Energy Safety Services Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008) (noting that driving is not itself a major life activity under the ADA). As the court in *Kellogg* noted, the activities enumerated by federal regulation "are all profoundly more important in and of themselves than is driving." *Id.* at 1125. Likewise, in rejecting driving as a major life activity under the ADA, the Eleventh Circuit reasoned that it "would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure." *Chenoweth v. Hillsborough County*, 250 F.3d 1329 (11th Cir. 2001). The Eleventh Circuit's statement has particular resonance in this case where Mandujano's drinking did not render him physically unable to drive but, at most, was a contributing factor to his loss of a license for a year. *See Budde v. Kane County Forest Preserve*, 597 F.3d 860, 863 (7th Cir. 2010) (rejecting a plaintiff's ADA claim alleging discrimination based on his alcoholism and a drunk-driving incident, in part, because the plaintiff's "inability to operate a vehicle is not the result of his disability; it is a consequence of choosing to drive his car after consuming four or five glasses of wine.").

ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
C 10-01226 LB
8

On the other hand, in Mandujano's October 2010 deposition, Mandujano stated that his drinking interfered with his social plans with friends. Exh. J, ECF No. 71 at 1236. He expanded upon this in his June 2011 declaration, asserting that his drinking substantially limited his major life activities by negatively affecting his ability to form close friendships and communicate with others as his cognitive functioning was impaired. Mandujano Decl., ECF No. 77-2 at 2. Mandujano, however, does not cite any authorities that suggest an inability to form close friendships is a substantial limitation on a major life activity. While the court has found Ninth Circuit cases that have held interacting with others is a major life activity, this is significantly broader than maintaining close friendships. *Cf. Rohan v. Networks Presentations LLC*, 375 F.3d 266, 275 n.15 (4th Cir. 2004) ("Individuals can successfully interact with each other without necessarily becoming friends. In the context of the ADA, which seeks to address discrimination in employment and public accommodations, 'interacting with others' must refer to a more fundamental aspect of human interaction."); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999) ("Because interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity.'"); *but see Mann v. City of Inglewood*, No. CIV.A.97-5534, 1998 WL 792300, at *1 (9th Cir. Nov. 13, 1998) (implying that maintaining "family and close relationships" is a major life activity).

In *McAlindin*, the Ninth Circuit held that "a plaintiff must show that his 'relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary'" to establish that the plaintiff's inability to interact with other constitutes a significant limitation on a major life activity. 192 F.3d at 1235. The Ninth Circuit noted that the plaintiff spent at least twenty hours per day at home, he avoided most activities "for fear that they will make him feel more anxious," and was "not involved in any groups or political or religious affiliations." *Id.* Mandujano does not allege any facts that approach this sort of extreme limitation..

In sum, Mandujano did not provide facts to support his assertion that his drinking substantially limited one or more major life activities. *Head*, 413 F.3d at 1059 ("To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain

1  sufficient detail to convey the existence of an impairment."). Therefore, the court finds that
2  Mandujano failed to establish an element of his Rehabilitation Act claim and summary judgment in
3  favor of Geithner is appropriate.

4  **2. Whether Mandujano Was Qualified for Employment at the Time of Removal**

5  Geithner also argues that Mandujano cannot establish a genuine issue of material fact as to
6  whether Mandujano was qualified for employment as a police officer at the time of his removal
7  because he lost his driver's license, and driving – according to Geithner – was a condition of his
8  employment and an essential function of Mandujano's employment. Defendant's Motion, ECF No.
9  69 at 14-15.

10  In support of his position, Geithner describes the facts and holding in *Sanders v. Potter*, 2009
11  WL 57540 (W.D. Wash. Jan. 8, 2009). Defendant's Motion, ECF No. 69 at 15. In *Saunders*, the
12  plaintiff signed a job description that outlined the requirements of the job, including the ability to lift
13  up to 70 pounds. 2009 WL 57540 at *6. The plaintiff admitted that she was unable to lift up to 70
14  pounds. *Id.* The court held that the plaintiff was not qualified where she could not perform physical
15  labor that constituted 90 to 95 percent of her job duties with or without reasonable accommodation.
16  *Id.* Geithner argues that the holding in *Saunders* is applicable because U.S. Mint Police Officers are
17  required to maintain a valid driver's license, the requirement is listed in the police officer job
18  description and the Mint Directives, Mandujano conceded that even one officer lacking a driver's
19  license would be a detriment to the Mint, and Mandujano lost his license. Defendant's Motion, ECF
20  No. 69 at 15 (citing McCampbell Testimony, Exh. A1, ECF No. 71 at 14-15; Position Description,
21  Exh. C, ECF No. 71 at 36-45; Mandujano Testimony, Exh. J, ECF No. 71 at 123-24; Plaintiff's
22  Motion, ECF No. 41 at 4); *see also* Mint Directive, Exh. E, ECF No. 71 at 54-56.

23  Mandujano argues that he was qualified for employment because he had been assigned non-
24  driving responsibilities on two previous occasions when he had lost his license for drinking and had
25  received positive evaluations over the course of his career. Plaintiff's Motion, ECF No. 73 at 19-20
26  (citing deposition testimony, at AR 969 and 1076, that Mandujano received non-driving assignments
27  when his license was suspended in 1994 and 2000 for driving under the influence); Plaintiff's
28  Opposition, ECF No. 77 at 2-3 (citing positive performance appraisals at AR 493-507); Plaintiff's

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  Reply, ECF No. 79 at 6-7.  He also argues that driving was not an essential function of the job
2  because there were two officers assigned to patrol cars and driving in the patrol car only constituted
3  one or two of the eight hour-long positions during each shift.  Plaintiff's Reply, ECF No. 79 at 15
4  (citing Mandujano's testimony regarding accommodation of another officer who could not drive at
5  AR 1069-70).

6  To determine whether an individual is qualified, the court first examines whether the individual
7  satisfies the requisite skill, experience, education and other job-related requirements of the position.
8  *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (*en banc*).  Next, the court
9  considers whether the individual can perform the essential functions of such position with or without
10 a reasonable accommodation.  *Id.*  Both parties focus their arguments on whether being able to drive
11 is an essential function of the position of U.S. Mint police officer.

12 Essential functions are "fundamental job duties of the employment position . . . not including the
13 marginal functions of the position." *Bates*, 511 F.3d at 988.  The ADA and implementing
14 regulations direct fact finders to consider the following: the employer's judgment as to what
15 functions of a job are essential; job descriptions prepared before advertising or interviewing
16 applicants; the amount of time spent on the job performing the function; the consequences of not
17 requiring the employee to perform the function; and the work experience of current and former
18 employees.  *Id.*  The employer must present evidence regarding the essential functions of the job
19 when refuting an ADA plaintiff's claim that he can perform the job's essential functions.  *Id.*

20 In this case, there is competing evidence as to whether Mandujano was qualified because it is not
21 clear that driving is an essential function of his job.  *See Cripe v. City of San Jose*, 261 F.3d 877,
22 888-89 (9th Cir. 2001).  Accordingly, summary judgment in favor of either party is not appropriate
23 on this ground.

24 **3. Whether Geithner Failed to Offer a Reasonable Accommodation**

25 Geither argues that there is no genuine issue of material fact as to whether he offered Mandujano
26 a reasonable accommodation because there was no position advertised that Mandujano could have
27 filled and Mandujano did not demonstrate that he was qualified for the alleged secretarial position.
28 Defendant's Motion, ECF No. 69 at 15-17.  Geithner also asserts that it is doubtful that Mandujano

1 requested the secretarial position. *Id.* at 17 n.2.

2 Geithner further argues that there is no evidence that the two prior reassignments received by Mandujano were in response to requests for reasonable accommodation based on Mandujano's alleged disability. Defendant's Opposition, ECF No. 76 at 6. Geithner adds that reasonable accommodation for alcoholism consists of time off to seek treatment. *Id.* (citing *Fuller v. Frank*, 916 F.2d 558, 562 (9th Cir. 1990) ("In the context of alcoholism, 'reasonable accommodation' must be limited in scope; continued 'accommodation' would simply enable an alcoholic to continue his or her drinking.")). Geithner claims that, in this case, Mandujano did not seek time off to pursue treatment but, instead, demanded assignment to another position that was in no way similar to the position he could no longer fill. *Id.* (citing *Quinones v. Potter,* 661 F. Supp. 2d 1105, 1124 (D. Ariz. 2009) (noting that position sought was not similar to the essential functions of the job the employee could no longer perform).

Mandujano argues that he requested reassignment to an alternate position for the duration of the time he was without his license as a reasonable accommodation during the oral reply meeting on November 6, 2008. Plaintiff's Motion, ECF No. 73 at 22. He also claims that he was assigned to non-driving duties on the two prior occasions when his driver's license had been suspended. *Id.* at 19. Mandujano further claims that there was a vacant secretarial position for which he was qualified and which he would have accepted. *Id.* at 22. He also argues that Geithner failed to engage in an interactive process. Plaintiff's Opposition, ECF No. 77 at 13-15.

To avoid summary judgment, a plaintiff "need only show that an accommodation seems reasonable on its face, i.e., ordinarily or in the run of cases." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). An "employer is not obligated to provide an employee the accommodation he requests or prefers;" the employer need only provide some reasonable and effective accommodation. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). Once an employee sets forth a facially reasonable accommodation, the ADA shifts the burden on the employer to show that a proposed accommodation will cause undue hardship. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir. 2000) (*en banc*), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). "Reasonable accommodations are mechanisms to remove barriers or provide assistance to

disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe*, 261 F3d at 889.

As discussed above, there is a genuine issue of material fact as to whether driving is part of the "essential functions" of a U.S. Mint police officer. Therefore, summary judgment for either party based on this element is not appropriate.[5]

### 4. Whether Mandujano was Fired for Misconduct

Geithner also argues that Mandujano was removed from his position because he violated the law and lost his driver's license, not because he was an alcoholic. Defendant's Motion, ECF No. 69 at 17-18. Geithner states that employers are allowed to hold alcoholics to the same standards as non-alcoholic employees, citing to the relevant statute and numerous cases supporting this proposition. *Id.* at 17 (citing, *inter alia*, 42 U.S.C. § 12114(c)(4); *Brown.*, 246 F.3d at 1187-88; *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996); *Maddox v. Univ. of Tennessee*, 62 F.3d 843, 847 (6th Cir. 1995)).

Mandujano states, "It is undisputed that plaintiff was removed from his 20 year police officer position solely for 'failure to maintain his drivers license and driving under the influence of alcohol.'" Plaintiff's Motion, ECF No. 73 at 23 (citing MSPB Initial Decision at AR 277). Mandujano argues that, based on the record, the court should find that Geithner's "justification for removing plaintiff was causally related to his disability, alcoholism." *Id.* at 23-24.

In *Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir. 1995), the Ninth Circuit affirmed summary judgment in favor of the employer in an ADA action brought by former employees who were fired for drug-related misconduct at its workplace following an undercover investigation. The court recognized a clear "distinction between termination of employment because of misconduct and termination of employment because of a disability." *Id.* at 832. Saliently, in cases involving illegal drug use or alcoholism, the Ninth Circuit has "applied a distinction between disability-caused conduct and disability itself as a cause for termination." *Humphrey v. Memorial Hospitals Ass'n*,

---

[5] Because the court does not find that summary judgment for either party based on this factor is appropriate, it does not reach the issue of "undue hardship."

239 F.3d 1128, 1140 n. 18 (9th Cir. 2001). Mandujano's primary argument – that there was a causal relationship between his drinking and the conduct that resulted in his dismissal – appears to misunderstand the significance of these holdings. As illustrated by the cases discussed below, an individual who suffers from illegal drug addiction or alcoholism is not shielded from termination when the individual's conduct warranted termination even if the conduct was causally related to the individual's illegal drug addiction or alcoholism.

In *Brown*, the plaintiff was arrested and then convicted of driving under the influence of intoxicants and possession of methamphetamine. 246 F.3d at 1186. While in jail and attending a court-ordered rehabilitation program, the plaintiff missed three work-shifts. *Id.* She subsequently was fired, according to company policy, for missing three consecutive shifts for an unauthorized reason. *Id.* The employee then sued, alleging violations of the ADA, Rehabilitation Act, FEHA, and state laws. *Id.* The district court granted summary judgment in favor of the employer, concluding that there was no genuine issue as to whether the employer violated the ADA because an employer is permitted to terminate an alcoholic employee for violating a rational rule of conduct even if the misconduct was related to the employee's alcoholism. *Id.* The Ninth Circuit affirmed because the evidence showed that the employer terminated the plaintiff pursuant to its general policy under which three consecutive unexcused absences from work warranted termination. *Id.* at 1287.

In *Ibarra v. Sunset Scavenger Co.*, No. C 01-2875 SI, 2003 WL 21244096 (N.D. Cal. May 21, 2003), the plaintiff had an accident while driving drunk in a company vehicle for which he was suspended for six months in June 1999. 2003 WL 21244096, at *8. The plaintiff's suspension was extended when he was unable to regain his commercial driver's license, and pursuant to the terms of the collective bargaining agreement, plaintiff was eventually terminated in August, 2000 for being unable to regain his license. *Id.* The district court held that, given these facts, no reasonable jury could conclude that plaintiff was suspended or terminated because he is an alcoholic. *Id.*

In *Labrucherie v. Regents of University of California*, No. C 94-1533 SC, 1995 WL 523905 (N.D. Cal. Aug. 30, 1995), the plaintiff was arrested for driving under the influence and was dismissed by his employer after he missed work while serving the criminal sentence. 1995 WL 523905, at *3-4. The plaintiff sued under the ADA and the court granted summary judgment in

favor of his employer because there was no evidence that he was terminated because of his alleged disability and not his criminal misconduct. *Id.* at 5. The plaintiff argued, in part, that his termination was based on his alcoholism because his drunk driving and resulting incarceration were causally connected manifestations of his alcoholism and the incarceration led to his missing work (the ultimate reason for which he was fired). *Id.* The court rejected this argument because the text of the ADA and the Ninth Circuit's related jurisprudence distinguish a dismissal for misconduct (even if it is related to illegal drug addition or alcoholism) from a dismissal for a disability. *Id.* The court further stated that the plaintiff's alleged disability cannot insulate him from the discipline that would be imposed upon any other employee. *Id.*

Mandujano notes that Inspector Massola testified that Mandujano's two prior DUI incidents were taken into consideration in the decision to remove Mandujano. Plaintiff's Motion, ECF No. 73 at 23 (citing MSPB Initial Decision at AR 279). The court might infer arguments related to this fact – e.g., Inspector Massola's consideration of the two prior DUI incidents suggests that Mandujano's dismissal was based on his status as an alcoholic (as evidenced by his continued problems with driving while under the influence) and not just his disability-related conduct (i.e., the loss of his driver's license and his conviction for driving under the influence). But Mandujano did not make any such argument and the court is unwilling to apply its own speculation. Moreover, the two past DUI incidents also are examples of criminal conduct, and it would be unreasonable to vitiate the ability of a law enforcement agency from considering the repeated criminal conduct of its police officers.

**B. Title VII Claim**

The court now turns to Mandujano's Title VII claim. The court finds that Mandujano failed to establish a *prima facie* employment discrimination claim based on national origin because he did not demonstrate that his performance met his employer's legitimate expectations or that other employees with qualifications similar to his own were treated more favorably. Additionally, the court finds that summary judgment in favor of Geithner is appropriate because Mandujano did not provide facts that support the inference that Geithner's reasons for firing Mandujano were merely pretext.

**1. Whether Mandujano Belongs to a Protected Class**

1   The parties do not dispute that Mandujano belongs to a protected class because he is Mexican-
2   American. *See Hispanic Taco Vendors of Washington v. City of Pasco*, 994 F.2d 676, 680 (9th Cir.
3   1993).

**2. Whether Mandujano was Performing to his Employer's Legitimate Expectations**

A plaintiff's failure to offer evidence establishing a necessary element of his or her prima facie case will ordinarily be fatal to the plaintiff's claim. *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

Geithner argues that Mandujano failed to establish that he was performing to his employer's legitimate expectations. Defendant's Motion, ECF No. 69 at 18-19. And Geithner further asserts that Mandujano's failure to maintain a condition of employment and his convictions for driving under the influence demonstrate that Mandujano was not meeting the legitimate expectations of his employer. *Id.*

In Mandujano's motion, he discusses only the fourth element (i.e., whether other similarly-situated employees were treated more favorably). Plaintiff's Motion, ECF No. 73 at 25. In his reply, he states that "he was qualified for the position, based on his eighteen years of service." ECF No. 79 at 7. Mandujano does not include any further analysis regarding this element and does not direct the court to any supporting evidence. The court, however, infers that Mandujano intends to refer to his positive job appraisals and, perhaps, Geithner's answer to Mandujano's request for admission no. 11, which stated that Mandujano satisfactorily completed all non-law enforcement duties from August 23, 2008 until his removal. *See* Performance Appraisals, AR 493-507; Defendant's Answers to Request for Admission No. 11, AR 549.

But these facts do not indicate that Mandujano's performance met his employer's legitimate expectations at the time of his dismissal. Regardless as to whether driving was an essential function of his job, the Mint Directives and other evidence make clear that driving was a component of his employer's legitimate expectations. *See Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002) (explaining that employee without driver's license and favorable driving record at time of his termination was not meeting legitimate expectations of employer that required both). Similarly, Mandujano fails to provide any evidence that breaking the law is not antithetical to the mission of a

1 law enforcement agency and such an agency's legitimate expectations of its employees. Also,
2 Mandujano's performance appraisals were about his past performance and did not speak to whether
3 his performance was sufficient after he lost his driver's license for the third time. *See Hefley v.*
4 *Village of Calumet Park*, 239 Fed.Appx. 276 (7th Cir. June 25, 2007) (holding that plaintiff's
5 positive performance reviews received prior to conduct that led to discharge does not establish that
6 plaintiff was meeting his employer's legitimate expectations). Finally, Geithner's answer to
7 Mandujano's request for admission no. 11 only establishes that Mandujano was carrying out his
8 non-law enforcement duties in a satisfactory manner. This does not demonstrate that he was
9 meeting his employer's legitimate expectations because he was employed as a law enforcement
10 officer.

11 For the foregoing reasons, Mandujano fails to establish a *prima facie* employment discrimination
12 claim based on his national origin. The court, however, continues the analysis.

13 **3. Whether Mandujano Suffered an Adverse Employment Action**

14 The parties do not dispute that Mandujano suffered an adverse employment action when he was
15 fired.

16 **4. Whether Other Employees with Similar Qualifications Were Treated More Favorably**

17 Mandujano must show that he is similarly situated to employees that received more favorable
18 treatment in all material respects. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). "[I]ndividuals
19 are similarly situated when they have similar jobs and display similar conduct." *Hawn v. Exec. Jet*
20 *Mgmt. Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634,
21 641 (9th Cir. 2003) (finding employee not similarly situated if he "did not engage in problematic
22 conduct of comparable seriousness to that of [the plaintiff]").

23 Mandujano argues that three similarly-situated Caucasian employees were treated more
24 favorably. He claims that Officer McCaughey was a U.S. Mint police officer who pulled his
25 weapon on an individual at a gas station but only was made to take a class in weapons handling.
26 Plaintiff's Motion, ECF No. 73 at 24-25 (citing AR 286-87, AR 977-79); Plaintiff's Opposition,
27 ECF No. 77 at 18; Plaintiff's Reply, ECF No. 79 at 7. Mandujano also claims that another U.S.
28 Mint police officer, Officer Uebel, did not have a driver's license (because he was blind in one eye)

1  but was not dismissed.  Plaintiff's Motion, ECF No. 73 at 25.  Mandujano also asserts that another
2  Caucasian U.S. Mint police officer, Officer Frederico, was not disciplined after he was charged with
3  a serious felony involving dangerous acts and acts of terrorism.  Plaintiff's Opposition, ECF No. 77
4  at 16-17.

5  Geither argues that the three Caucasian officers were not similarly situated.  Defendant's
6  Opposition, ECF No. 76 at 8; Defendant's Reply, ECF No. 78 at 7.  First, Officer McCaughey was
7  not charged with any crimes and did not lose his driver's license.  *See* Defendant's Opposition, ECF
8  No. 76 at 8 (citing Memorandum of Administrative Investigation Regarding McCaughey, Exh. Q,
9  ECF No. 71 at 172).  Geithner similarly distinguishes Mandujano from Officer Uebel because Uebel
10 retired ten years prior to the incident that led to Mandujano's dismissal and there is no evidence that
11 Uebel was convicted of breaking the law.  *Id.*  Geithner distinguishes Mandujano from Officer
12 Frederico because Frederico was never employed at the San Francisco Mint and passed away in
13 2001, long before the events at issue.  Defendant's Reply, ECF No. 78 at 7.  Moreover, the
14 administrative law judge for the MSPB stated that Frederico was not convicted and voiced her
15 concerns regarding the source – Dectective.com – of Mandujano's information.  MSPB Transcript,
16 Exh. A, ECF No. 71 at 10-11.

17 The court agrees with Geithner.  Mandujano failed to establish that similarly-situated individuals
18 were treated differently because he provides no evidence that any of the three individuals were
19 convicted of crimes and lost a condition of their employment while working as a U.S. Mint police
20 officer in San Francisco.  *See Freeman v. Astrue*, 405 Fed. Appx. 148, 151 (9th Cir. 2010) (holding
21 that "employees who have not engaged in problematic conduct of comparable seriousness, or
22 employees with differing levels of responsibilities are not similarly situated."); *Vasquez*, 349 F.3d at
23 641 (holding that employees are similarly situated when "they have similar jobs and display similar
24 conduct"); *Riser v. Target Corp.*, 458 F.3d 817, 821-22 (8th Cir. 2006) (holding that employees who
25 had different duties and who worked in different locations than the plaintiff were not similarly
26 situated).  Accordingly, the court finds that Mandujano failed to establish a *prima facie* employment
27 discrimination claim based on national origin but continues its analysis for the sake of completeness.
28 **5. Whether Geithner's Proffered Reason was Pretext**

1     "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons
2  for its actions which, if believed by the trier of fact, would support a finding that unlawful
3  discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509
4  U.S. 502, 507 (1993) (quotations omitted).  This is merely a burden of production, not proof, as the
5  ultimate burden of persuasion resides with the employee. *St. Mary's*, 509 U.S. at 508; *Villiarimo v.*
6  *Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

7     "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the
8  employer, or indirectly, by showing that the employer's explanation is unworthy of credence."
9  *Vasquez*, 349 F.3d at 641.  Direct evidence consists of clearly racist or discriminatory statements or
10 actions by the employer, and very little direct evidence is required to raise a genuine issue of
11 material fact. *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  Indirect,
12 circumstantial evidence must be "specific and substantial" to defeat summary judgment. *Id.*

13    Mandujano claims that Geithner's proffered legitimate reason was that Mandujano lacked a
14 driver's license.  Plaintiff's Opposition, ECF No. 77 at 16.  First, this is incorrect.  Geithner's
15 proffered legitimate *reasons* were that Mandujano lacked a driver's license *and* sustained a
16 conviction for driving under the influence.  Defendant's Motion, ECF No. 18-19.

17    Mandujano then claims that Geithner's proffered reason was merely a pretext because Caucasian
18 officers allegedly were treated less harshly for more significant detrimental conduct.  Plaintiff's
19 Opposition, ECF No. 77 at 16-18.  He discusses the examples of McCaughey and Frederico. *Id.*

20    Mandujano also argues that Geithner's proffered reason was merely a pretext because it is
21 possible that Geithner could have accommodated Mandujano's failure to maintain a driver's license.
22 In support of this argument, Mandujano claims that were is a dispute as to whether driving was an
23 essential function of the position, whether there were other officers who could have done the
24 driving, and whether there were other duties to which Mandujano could have been assigned.
25 Opposition, ECF No. 77 at 16.  Mandujano also argues that Geithner's alleged failure to comply
26 with the collective bargaining agreement provisions regarding discipline are indicative of a
27 discriminatory motive. *Id.* at 17.  And Mandujano notes that the Mint regulations state that
28 employees who lose their license to drive "must not drive any Mint vehicle . . . until their license is

restored," which suggests such employees are not to be summarily dismissed. *Id.* at 18.

The court finds that Mandujano failed to demonstrate that Geithner's proffered reason was mere pretext. As discussed above, the other officers discussed by Mandujano were not similarly situated. Also, Mandujano's argument that Geithner *could have* accommodated Mandujano's loss of his driver's license does not create a genuine issue of material fact as to whether Geithner's decision to fire him was a pretext for discrimination.

### C. Geithner's Affirmative Defenses

Because the court finds that summary judgment in favor of Geithner is appropriate on all claims, the validity of his affirmative defenses is moot.

### V.  CONCLUSION

The court **GRANTS** Geithner's motion for summary judgment as to Mandujano's second (Rehabilitation Act) and third (Title VII) claims. The court **DENIES as moot** Mandujano's motion for summary judgment on these same claims.

This disposes of ECF Nos. 69 and 73.

**IT IS SO ORDERED.**

Dated: June 27, 2011

_____
LAUREL BEELER
United States Magistrate Judge